## Snyder's Appeal.

A testator directed that his real estate should be sold, and then gave and bequeathed his estate, upon the death of his wife, to his seven children and to his grandson, H., share and share alike, "and in case my said grandson H., shall at any time die without issue, I then give and bequeath the bequest of him, the said H., so dying, unto all my children, to share and share alike." The grandson survived the testator and died without issue: *Held*, that it was evident the testator intended a definite failure of issue at the time of the grandson's death, and that, therefore, the bequest over to the testator's children took effect.

June 14th 1880.    Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Appeal from the Orphans' Court of *Snyder county*: Of May Term 1880, No. 219.

Appeal of Jeremiah Snyder and others from the decree of the court in the distribution of a fund in the hands of the guardian of Allen S. Hummel, deceased.

George A. Snyder died December 14th 1871, leaving a will dated February 27th 1869, which contained, inter alia, the following direction :

" And, further, I bequeath unto my beloved wife out the third of all my other real and personal property as soon after it is sold as can be made convenient for the and at her decease I give and bequeath unto my children as follows, viz. : Jeremiah Snyder, Lewis Martin Snyder, George A. Snyder, Jacob Peter Snyder, William H. Snyder, Samuel J. Snyder and my daughter Margaret Elizabeth, intermarried to William Hains, and my grand son, Allen Hummel, child of my late deceased daughter, Emma Catherin, share and share alike, and in case my said grand son, Allen Hummel, shall at any time die without issue I then give and bequeath the bequest of him the said Allen Hummel so dying unto all my children, viz., Jeremiah Snyder, Lewis M. Snyder, George W. Snyder, J. P. Snyder, William H. Snyder, Samuel J. Snyder and my daughter, Elizabeth Hains, to share and share alike."

All the children and the grandson named in the above clause of the will survived the testator. The share of the grandson, Allen S. Hummel, amounting to $1732.09, was paid to his guardian. Allen S. Hummel died on October 6th 1879, a minor, unmarried and without issue. His guardian filed his account, wherein it appeared that the original amount, $1732.09, received from his grandfather's estate, was in the guardian's hands, which, with interest thereon, less certain expenses and commissions, amounted to $2252.48. John P. Cronmiller, Esq., was appointed auditor to distribute this fund, before whom it was claimed by the children and heirs of George A. Snyder, deceased, on the ground that Allen S. Hummel had died *without leaving issue*, while his father claimed it as his heir-at-law or next of kin under the intestate law. In making their claims no distinction was made by either claimants between the principal and the interest of the fund.

The auditor reported : " From a careful examination of the authorities on clauses in wills which have been before courts for construction of the same or similar words, the auditor is of the opinion that the words in the will of George A. Snyder, deceased, import an indefinite failure of issue, and according to the authorities, this would give Allen S. Hummel an estate tail in the real estate, and an absolute and vested interest in the personal property : Amelia Smith's Appeal, 11 Harris 9 ; Mengel's Appeal, 11 P. F. Smith 248 ; Biddle's Appeal, 19 Id. 194.

" The real estate of the testator was converted into personalty by the directions in the will to sell the same. It was in fact converted after the death of the testator, and the share of Allen S. Hummel paid over to his guardian, Edward Bassler, Esq., without any condition whatever. The auditor is, therefore, of the opinion that the balance in the hands of the guardian was vested in the

said Allen S. Hummel during his lifetime; that the gift being limited over on an indefinite failure of issue, by operation of the rule of law in such cases the gift over was void for remoteness, and it therefore passed and vested in him absolutely, and his father, John Hummel, under the intestate laws of this Commonwealth, is entitled to receive the payment of the balance in the hands of said guardian."

The children of George A. Snyder filed exceptions, which the court overruled, and confirmed the report, when said children took this appeal.

*Charles Hower*, for appellants.—Under the provisions of this will Allen S. Hummel simply took a life estate in the property bequeathed to him. From the language used in the will an indefinite failure of issue is not to be inferred: Hopkins *v.* Jones, 2 Barr 69; Sheetz's Estate, 2 P. F. Smith 257; Koppenhaffer's Appeal, 6 Norris 196; Seibert *v.* Butz, 9 Watts 490; Eichelberger *v.* Barnitz, Id. 450; Emma Myers's Appeal, 13 Wright 111; Caldwell *v.* Skilton, 1 Harris 151, 157; Kelso *v.* Dickey, 7 W. & S. 279.

*S. P. Wolverton*, for appellee.—Many authorities might be cited to show that the decisions have been uniform in declaring such phrases as found in the will of George A. Snyder to import an indefinite failure of issue vesting in the first taker a fee simple in the real estate and an absolute title in personalty. The language in this will is, "shall at any time die without issue," which more certainly imports an indefinite failure of issue than in any of the decided cases. The language stands alone and not qualified by any other expressions in the will, and must receive the construction that the law has placed upon it by a long unbroken line of decisions. The cases cited in the argument of counsel for appellant are easily distinguishable from the numerous cases that show that Allen Hummel took a vested legacy under his grandfather's will.

Mr. Justice GREEN delivered the opinion of the court, October 4th 1880.

The testator, George A. Snyder, directed all his real estate to be sold. The proceeds, together with his personal property, constituted the estate of which he disposed. It was, of course, all personal estate. Subject to a provision in favor of his widow during her life, he gave the whole of it in equal shares to his six sons, a daughter and a grandson, Allen S. Hummel, the child of a deceased daughter. The will then provides as follows: " And in case my said grandson, Allen Hummel, shall at any time die without issue I then give and bequeath the bequest of him, the said

Allen Hummel so dying unto all my children, viz., Jeremiah Snyder, Lewis M. Snyder, George W. Snyder, J. P. Snyder, William H. Snyder, Samuel J. Snyder and my daughter, Elizabeth Hains, to share and share alike." Allen S. Hummel, the grandson, died, unmarried and without issue, on October 6th 1879. The tastator died December 14th 1871. In November 1879 the guardian of Allen S. Hummel filed his account, showing a balance of $2252.48 in his hands. Of the entire fund a part, $1732.09, was received from the administrators of George A. Snyder, deceased, on March 3d 1873, and another part, $668, was an accumulation of interest upon the above sum for upwards of six years, while the fund was in the hands of the guardian, none of which appears to have been expended in the support of the ward. On the hearing before the auditor the fund in the hands of the guardian was claimed by the children of George A. Snyder as substituted legatees under their father's will on the one hand, and on the other by John Hummel, the father of Allen S. Hummel, as his distributee under our intestate law.

No question was raised before the auditor or in the Orphans' Court as to any difference between the principal sum of the legacy and its increment of interest after the death of George A. Snyder. The former was clearly subject to the provisions of the will under which it was derived, but the latter was the absolute property of the ward and must be disposed of as his in the distribution of his estate, unaffected by the will of his grandfather. The entire fund was awarded by the auditor and court below to John Hummel upon the ground that the limitation over to the other legatee named in the will, being upon an indefinite failure of issue, was void, and the interest of Allen S. Hummel in the bequest to him was absolute and must pass to his father as his distributee. Was this ruling correct? That depends upon various considerations.

There is no doubt that in devises of real estate, as a general rule, a limitation over upon an indefinite failure of issue of the devisee creates an estate tail which under our Act of 1855 becomes a fee simple, and, if the estate of the first taker is a fee, the limitation is void for remoteness. In the present case the subject-matter of the contention is personal estate exclusively. It has for a very long time been held that in bequests of personal estate the rule of construction upon a limitation over on a *dying without issue* is quite different from the rule which prevails in devises of real estate upon the same kind of limitation. In the case of Pinbury v. Elkin, 1 P. Williams 563, the lord chancellor said " that the words ' dying without issue' had several senses; as, first, a *legal* sense when there was a failure of issue of a tenant in tail so as to entitle the remainderman or reversioner to a *formedon* in remainder or reverter, which is whenever there is a failure of issue of the body of tenant in tail. Secondly. Another sense of dying without issue was, if the

14 NORRIS—12

party died *without ever having had issue* \* \* \* But by the third sense of a person's dying without issue is intended *without leaving issue at the time of his death*, and in this sense the words 'dying without issue' shall be taken in the principal case, which, indeed, seems to be the natural meaning of these words." \* \* \* "More-over, in the principal case, the words import strongly that they are to be intended in this sense, to wit, dying without issue *living at the party's death*, because the legacy of 80*l.* being the legacy in question, if the wife should die without issue by the testator, then after her decease is to remain to the testator's brother, which words *then after*, *i. e.*, *immediately after*, would be inconsistent and repugnant if the dying without issue should be taken in the other sense whenever there shall be a failure of issue ; for this would be carrying the payment beyond the day ; it would be as absurd as to appoint the day of payment to be to-morrow if it shall rain this day twelve month, which is to make the condition overreach the day of payment." \* \* \* "Also," his lordship said, "that tak-ing the 80*l.* as intended to be given whenever there should be a failure of issue of the body of the testator's wife by him, this would be a strange clog upon a personal estate, and subjecting it to the payment of a sum of money (as it might happen) one hun-dred years hence when it would be no kindness to the legatee in whose favor it was personally intended."

In Hughes *v.* Sayer, 1 P. Williams 534, it was held that a bequest of personal estate to A. and. B., and if either die without children then to the survivor, and if both should die without chil-dren, then to the children of the testator's other brothers and sisters, was a good limitation over to the substituted legatees.    The lord chancellor held that "the words ' dying without children' must be taken to be *children living at the death of the party*.    For that it could not be taken in the other sense, that is whenever there should be a failure of issue, because the immediate limitation over was to the surviving devisee, and it was not probable that if either of the devisees should die leaving issue the survivor should live so long as to see a failure of issue, which in notion of law was such a limitation as might endure for ever."

In both the foregoing cases the limitation over was held to be good upon the ground that the testator must have intended the words "dying without issue" to mean not an indefinite failure of issue, but a failure of issue *living at the death of the first taker*. And the intention of the testator was inferred from the very words of the bequest, and not from other provisions of the will.

In the case of Forth *v.* Chapman, 1 P. Williams 666, the lord chancellor said "that the reason why a devise of a freehold to one for life, and if he die without issue, then to another, is determined to be an estate tail, is in favor of the issue that such may have it, and the intent take place ; but that there is the plainest difference

betwixt a devise of a freehold and a devise of a term for years, for in the devise of the latter to one, and if he die without issue, then to another, the words ' if he die without issue' cannot be supposed to have been inserted in favor of such issue, since they cannot, by any construction, have it." * * * "As to the freehold, the construction should be, if William or Walter died without issue *generally*, by which there might be *at any time* a failure of issue; and with respect to the leasehold, that the same words should be intended to signify their dying without leaving issue at their death."

The doctrine of these cases has been repeatedly recognised and enforced in Pennsylvania. Thus in Clark *v.* Baker, 3 S. & R. 479, this court, TILGHMAN, C. J., said: "These words *without leaving issue* applied to *personal* estate, have been held to mean issue living at the death of the person to whom the property is given in the first instance. But not so with regard to land. This is the distinction taken in the case of Forth *v.* Chapman, 1 P. Williams 667, and it is well founded, because it carries into effect the intention of the testator. It would answer no purpose to understand *issue indefinitely*, in the case of personal property, because the law would not permit that issue to take. But it answers the best purpose in case of real property, because the issue may take accordingly."

In Hopkins *v.* Jones, 2 Barr 71, it was held that "the words ' die without lawful issue' are to be construed, in case of personal estate, to mean ' die without leaving lawful issue where that corresponds with the testator's intent.' "

In Seibert *v.* Butz, 9 Watts 494, it was held by GIBSON, C. J.: "There is, perhaps, no case in which the limitation over of personal estate, after an indefinite dying without issue, whether the first limitation were indefinite or expressly for life has *ex vi termini* been confined to a dying without issue at the time of the death; but the courts have seized with avidity on any circumstance, however trivial, denoting an intent to fix the contingency at that period." The circumstance seized upon in that case was that the limitation over was upon the legatee's dying "without heirs or testament." The court held that though there might be "an indefinite dying without issue, there can be no indefinite dying without a will," and they therefore construed the language to mean a dying without heirs living at the decease of the legatee, upon the ground that such must have been the intent of the testator.

In the case of Eichelberger *v.* Barnitz, 9 Watts 450, the leading case in Pennsylvania declaring the general rule in cases of real estate, the exceptions to it were also stated as follows: "The exceptions to the application of the general rules are either in cases of personal estate in which the construction is more liberal in favor of executory devises; or when the time at which the devise over is to take effect is expressly or impliedly limited to a particular period

within a life or lives in being and twenty-one years after; as where the contingency is, if the first taker die without issue before arriving at twenty-one, or if he die unmarried and without issue, or if he die without leaving issue *behind* him, or living at the time of his decease, or if the devise over be of a life estate, which implies necessarily that such devise over may outlive the first estate; in all these cases the testator has been considered as meaning a failure of issue within a fixed period, and not an indefinite failure of issue."

In Sheetz's Appeal, 2 P. F. Smith 257, the testator gave his real and personal estate to his children by name in equal shares, but coupled with a direction that the executors should invest the property so far as it should be converted into money, and the interest and rents should be paid to the children during their lives, and after their deaths the principal to their children.    There was a limitation over in these words, " Provided, however, that if any of my said children should die without issue, the share, purpart or dividend of such heir shall be equally divided amongst the survivors or children of the survivors of such heir."    The court below held that the children took a fee simple in the real estate and an absolute estate in the personalty.    But this court, reversing that decision, held that the children of the testator took but a life interest in both the real and personal estate with remainder in fee to their children.    STRONG, J., in delivering the opinion of the court, said, on p. 263 : " No principle is better settled than that if a testator in one part of his will give to a person an estate of inheritance of lands, or an absolute interest in personalty, and in subsequent passages unequivocally shows that he means the devisee or legatee to take a lesser interest only, the prior gift is restricted accordingly.    * * * Both the admitted rules of legal construction and the statute regard a limitation over after the death of the first taker as evidence of an intention that the devisee or legatee of the prior estate in order of enjoyment is to have no more than an estate or interest for life."

In Emma Meyers's Appeal, 13 Wright, READ, J., says, on page 113 : " In Re Wynch's Trusts, 17 Jur. 588, Vice Chancellor Stuart says, page 593, ' words importing a gift to issue or a gift over on failure of issue when applied in a will to personal estate, receive a different construction from that which they would receive if applied to real estate.' "    On page 114 he refers to and approves of Clarke *v.* Baker, 3 S. & R. 477, and Forth *v.* Chapman, 1 P. Wms. 667, above cited.

In the case of Hill *v.* Hill, 24 P. F. Smith 173, this court, SHARSWOOD, J., said : " It is too well settled by a long train of authorities to be now a question that a devise in fee, with a limitation over upon the death of the first taker leaving no issue, reduces the estate in fee to an estate tail.    Eichelberger *v.* Barnitz, 9 Watts 447, is the leading case, and it has never been shaken.    On the

other hand, it is equally clear that if there is anything in the will which indicates the intention of the testator that this word 'issue' shall not mean 'issue indefinitely' but children, then this construction does not apply." In that case the limitation over was, "if my daughter Sarah die leaving no issue or *child*," her .share should fall back, &c., and we hold that the words " *or child* " were evidence that the testator intended a failure of children and not a failure of issue generally, and therefore that the devisee did not take an estate tail so as to alien it as a fee under the Act of 1855.

In Middleswarth's Adm'r *v.* Blackmore, 24 P. F. Smith 414, the devise was to Jonathan absolutely of certain real estate, with a a direction that if he died without leaving any legitimate issue, the property was to be sold by the executors and the proceeds to be given partly in charity and partly to the testator's legitimate grandchildren, by his children who had been previously named. We held, reversing the court below, that the direction to the executors to sell, and to pay the proceeds to grandchildren whose parents were previously named in the will, were sufficient evidence that that an indefinite failure of issue was not intended. Speaking of the direction to the executors to sell, we said: "It manifestly indicates that this failure will occur during the lifetime of some one of his executors named." As to the bequest of the proceeds, we said "all the authorities concur in saying that the devise over should be considered in determining whether the estate should vest on the death of the first taker. In distributing the proceeds of the land in which his wife had a limited use, he gave the names of the several parents of his grandchildren who were to take; thus fixing beyond any question that the recipients should be no further removed from him. In the latter distribution, he does not unnecessarily repeat the names of the parents of his grandchildren, but evidently had the same persons in view. This excludes the idea that the issue of Jonathan had reference to some remote period of the future."

In the present case the question is, what was the intention of George A. Snyder as to the time when the failure of issue of Allen S. Hummel should occur, upon which the legacy to him was limited over. Did he mean that it was to occur at the death of Allen S. Hummel, or at some remote period in the future ? If the latter, the limitation being upon an indefinite failure of issue, and the bequest to Allen being absolute, his interest in the bequest was an absolute estate, and it cannot be given to the persons to whom it was bequeathed by the express words of the will. But if the former was his meaning, then it was a limitation upon a definite failure of issue, and the substituted legatees must take the fund. The will was written by the testator, who was a farmer, and its language is so extremely defective in grammatical expression and tech-

nical precision that it is in places almost unintelligible.   Of course, the distinction between a definite and an indefinite failure of issue was to him an unknown subject.   But the persons whom he desired to enjoy his estate, and the time when he wished them to receive their shares, were matters entirely within his comprehension, and for them he made provision in his own homely way.   His wife was to have such of the furniture as she desired, the real estate was to be sold and one-third of the proceeds he set apart for her use during life.   She was to be permitted to occupy one of his houses, but if she chose not to do so, his " children " were to provide her a home by purchasing a house and lot for her use.   One-third of all the estate is again given for the use of his wife, and he then provides as follows: "And at her decease, I give and bequeath unto my children as follows, viz. : Jeremiah Snyder, Louis Martin Snyder, George A. Snyder, Jacob Peter Snyder, William H. Snyder, Samuel J. Snyder and my daughter Margaret Elizabeth, intermarried to William Hains, and my grandson, Allen Hummel, child of my late deceased daughter Emma Catharine, share and share alike, and in case my said grandson, Allen Hummel, shall at any time die without issue, I then give and bequeath the bequest of him, the said Allen Hummel so dying, unto all my children, viz. : Jeremiah Snyder, Lewis M. Snyder, George W. Snyder, J. P. Snyder, William H. Snyder, Samuel J. Snyder and my daughter Elizabeth Hains, to share and share alike."   He refers to an account-book which, by the description of it in the previous part of the will, evidently contained a memorandum of advancements to his children, and directs in somewhat obscure language that his " children " shall all be made equal.   His " children " are the direct objects of his bounty.   They are described both as a class and by the express mention of their individual names.   The bequest of Allen S. Hummel is given to the same persons, their names being repeated and without including their heirs or representatives.   It is entirely clear to us that he intended the same persons and no others to take Allen Hummel's share in the contingency of his dying without issue, as those who were to take the residue of his estate.   He says so in the most positive manner, and his description of those persons is so circumscribed that we can make no other inference as to their identity.   But if this be so, the failure of issue contemplated by the testator must have been such as would naturally occur within the lifetime of the substituted legatees or some of them.   We are not at liberty to believe that he had in his mind the vesting of the interests limited over, at some indefinite period in the future when Allen S. Hummel should or might be without issue in the strictly technical sense of the expression.   His language is, "And in case my said grandson, Allen Hummel, shall *at any time* die without issue, I *then* give and bequeath the bequest of him, the said Allen Hummel *so dying*, unto

all my children," &c., naming them. That is, at whatever time Allen dies, *then*, viz., *at the time of his death*, the bequest to him *so dying* shall go to the testator's children. The time of Allen's death is here referred to in three modes as the period of the determination of his estate, and at that time and upon the happening of that contingency without issue of Allen, the same estate is given to living persons who are specially named, and without any words of succession to others in the event of their death. This expression, *then*, in connection with the limitation over, received precisely this construction in the case of Pinbury *v.* Elkin, 1 P. Wms. 563, heretofore cited.

We are of opinion that the testator intended that *his own children* should take Allen S. Hummel's share if Allen died without issue *living at the time of his death*, and as that is a case of a definite failure of issue, it follows that Allen's interest was a defeasible one terminable at his own death. The decree of the court below must therefore be reversed. This decision, however, can only operate upon so much of the fund as was affected by the will of the testator. That portion of the fund is the amount received from the administrators of George A. Snyder, to wit, $1732.09. From this sum should be deducted its proportionate share of the expenses of the administration of the fund by the guardian and also of the costs of the audit upon his account and of this appeal. The first and second assignments of error are without merit and are dismissed.

> Decree reversed and record remitted for further proceedings, with direction to the court below to correct the account and distribution by awarding to the appellants the sum of $1732.09, less its pro rata share of all the expenses of the administration of the fund and of the costs of the audit and of this appeal, and to John Hummel the sum of $672.69, less its pro rata share of the same expenses and costs, the costs of this appeal to be paid out of the fund for distribution.

Justices GORDON and TRUNKEY dissented.