## Wallace *v.* Denig et al., Appellants.

[Marked to be reported.]

*Will—Active trust—Definite failure of issue.*

Testator by will devised real estate to a trustee in trust for his daughter Lydia to permit her " to occupy and enjoy the same for her separate use, not to be under the control or subject to the debts of her husband, but to enjoy all the rents, issues and profits during her natural life, and at her death to descend to the issue of her body; but if the said Lydia should die leaving no issue, then the said estate to revert back to and be a part of my residuary estate." By a subsequent clause the trustee was authorized to surrender and assign the entire trust to the daughter if he should deem it advisable. *Held*, that the trust was an active one; that the testator contemplated a definite failure of issue; and that the husband of the daughter was not entitled to any interest in the estate as an heir of a child who had died during the lifetime of his wife.

Argued Nov. 1, 1892.   Appeal, No. 154, Oct. T., 1892, by defendants, C. Denig et al., from judgment of C. P. No. 3, Allegheny Co., Aug. T., 1892, No. 251, on verdict for plaintiff, James Wallace.   Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Ejectment for undivided one half of farm.

At the trial it appeared that plaintiff claimed a life interest in one half of the land in controversy as father of his child

Margaret, who died in 1851. The facts of the case appear by the opinion of the Supreme Court.

Plaintiff's points which were affirmed were as follows:

" 1. By the will of Barnett Gilleland, deceased, the legal title to the land in dispute in this case was placed in the testator's son William in trust for Lydia Wallace during her life, and in trust to support until the birth of issue, the contingent remainder limited by the will to the issue of her body, as purchasers. [4]

" 2. The said testator by the sixth paragraph of his will limited the estate in remainder to the issue of the body of Lydia Wallace in the sense of children, and the estate so limited in remainder was contingent until the birth of James S. Wallace in 1847, when it immediately vested in him, subject to open and let in after-born children, and upon the remainder so vesting, the trust in William, so far as created to support said remainder, ended, leaving the legal estate in remainder fully vested in said James S. Wallace. [5]

" 3. The estate in remainder which became vested in said James S. Wallace, as stated in the foregoing point, opened at the birth of his sister Margaret, in 1849, and took her in, thereby vesting in her a legal remainder in fee in the undivided half of the land in dispute, and at her death in 1851 the remainder so vested in her passed under the intestate laws to her father, James Wallace, the plaintiff in this suit, who thereupon became entitled at the death of Lydia Wallace to the possession of said undivided half for life. [6]

" 4. Under the evidence, the plaintiff is entitled to a verdict for the undivided half of the land described in the writ in this case, together with mesne profits." [7]

Defendants' points which were refused were as follows:

" 1. Defendants' counsel request the court to charge, that under the abstract of plaintiff he is not as matter of law entitled to recover. [1]

" 3. Under the will of Barnett Gilleland in evidence, and under the law and the pleadings, plaintiff is not entitled to recover. [2]

" 5. Under the said will of Barnett Gilleland the failure of issue therein is a definite failure of issue, and Maggie, who died in 1851, dying before Lydia, took no interest therein." [3]

The court directed the jury to return a verdict in favor of plaintiff. [8, 9]

Verdict and judgment for plaintiff.   Defendant appealed.

*Errors assigned* were (1–9) instructions as above, quoting them.

*N. W. Shafer, Joseph A. Langfitt* with him, for appellant.— The intent of testator was to give the trustee the right, as part of the trust, to turn over to Lydia the whole estate; but if the right was not exercised, the intent was that the will should be interpreted as of the death of the testator.   The whole legal title was put in the trustee to preserve the estate for Lydia, and if not for her to drop it on her issue or children, if any, and if none into the residuary estate.   As long as the trust existed in the trustee, Lydia's children had no interest: Wallace v. Wainwright, 87 Pa. 263.

It was the obvious intent of testator not to benefit plaintiff.

Testator contemplated a definite failure of issue: Eichelberger v. Barnitz, 9 Watts, 447; Miller's Est., 145 Pa. 561.   The trust was not intended to support a contingent remainder: Woelpper's Ap., 24 W. N. 235; Bl. Com. 170; Rife v. Geyer, 59 Pa. 393; People's Bank v. Denig, 131 Pa. 241.

The legal estate will remain in the trustee so long as it is necessary to preserve the estate itself: Kay v. Scates, 37 Pa. 31; Rife v. Geyer, 59 Pa. 393; Dodson v. Ball, 60 Pa. 492; Thompson v. Carmichael, 122 Pa. 478; Perry on Trusts, sec. 20, 4th. ed.

*J. M. Garrison, A. M. Imbrie* with him, for appellee.— Whether the interest of Margaret was vested or contingent, it passed by descent to her father under the intestate laws: 1 Fearne on Remainders, 363, 582.   Margaret, however, had a vested remainder.   A remainder is regarded as vested, rather than contingent, if such construction is possible : Buzby's Ap., Pa. 31; Passmore's Ap., 23 Pa. 381; Rewalt v. Ulrich, 23 61 Pa. 111; Smith's Ap., 23 Pa. 9; Manderson v. Lukens, 23 Pa. 388; Letchworth's Ap., 30 Pa. 175; Burd v. Burd, 40 Pa. 182; Womrath v. McCormick, 51 Pa. 504; Fahrney v. Holsinger, 65 Pa. 388; Braden v. Cannon, 1 Gr. 60; 2 Washburn on Real Property, 509; Passmore's Admr.'s Ap., 23 Pa. 381; Young v. Stoner, 37 Pa. 105.

Lydia took an equitable life estate in the land with remainder in fee to the issue of her body, subject to an executory devise over if she should die leaving no issue. The estate limited in remainder to the issue of the body of Lydia was a base fee, determinable by the possibility of her dying without issue. As Lydia left issue, the possibility of the executory devise over ever taking effect in possession ended at her death.

An estate tail was not created by the will: Denig v. Bank, 131 Pa. 241; Bacon's Ap., 57 Pa. 504; Rife v. Geyer, 59 Pa. 393. Testator meant the words "issue of her body" as words of purchase: Robins v. Quinliven, 79 Pa. 333; Thompson v. Ward, 12 W. N. 566; Eichelberger's Ap., 135 Pa. 160.

As soon as a child was born to Lydia the remainder vested in that child as the representative of its class subject to open and take in after-born children: 2 Washburn on Real Property, 511; Daley v. Koons, 90 Pa. 246; Barclay v. Lewis, 67 Pa. 316; Lantz v. Trusler, 37 Pa. 482; Minnig v. Batdorff, 5 Pa. 503.

The words "and at her death to descend," etc., only mark the time when the gift shall take effect in possession, and do not note a condition that the child shall survive the mother, nor define when the interest shall vest: Manderson v. Lukens, 23 Pa. 31; Chew's Ap., 37 Pa. 23.

The discretionary power in the trustee did not render contingent the estate limited in remainder. The surrender would have operated on the life estate only, and not upon the estate in remainder.

*N. W. Shafer, Joseph A. Langfitt* with him, in reply.—In reply to the argument of appellee it is pertinent to say that when testator created this trust in his son William, Lydia was childless, and therein it differs from the case of Minnig v. Batdorff, 5 Pa. 503. It also differs from that case in that the farm was devised to said trustee, and the trust permitted him, if he thought proper and prudent, to surrender it during the life of Lydia Wallace.

The case differs from Rife v. Geyer, 59 Pa. 393, in giving the trustee greater limit in the exercise of the duties of the trust, but in that he was only to carry it over to the heirs of the life tenant. The trustee could not surrender or assign as in this

case. In Daly v. Koons, 90 Pa. 246, the words and the circumstances and surroundings were different.

OPINION BY MR. CHIEF JUSTICE PAXSON, January 3, 1893 :

This was an action of ejectment in the court below in which James Wallace, the plaintiff and appellee, claims title to an undivided one half of a farm in Braddock township, during his life, as father of his daughter, Maggie, who died in 1851.

Barnett Gilleland executed his will March 13, 1844, and died on and about November 1, 1845.

By the sixth paragraph of his will the testator provides: " To my son, William, I hereby give and bequeath in special trust and confidence as trustee of my daughter, Lydia Wallace, the second choice (after my son, James) of the above three allotments in Wilkins township; that he will permit the said daughter, Lydia Wallace, to occupy and enjoy the same for her separate use, not to be under the control or subject to the debts of her husband, but to enjoy all the rents, issues and profits during her natural life; and at her death to descend to the issue of her body; but if the said Lydia should die leaving no issue, then the said estate to revert back to and be a part of my residuary estate, the same to be in full of my said daughter, (Lydia's) part, except the bequest hereinafter made out of my residuary estate."

The fourteenth paragraph of the will further provides: " It is my desire and will that any time my said son, William, shall think right, and proper and prudent, he may surrender any of the foregoing trusts ; he may surrender and assign the same to Nancy Guthrie, Lydia Wallace, or Euphemia Marshall, or either or all of the said trusts, but it is my wish that he would not do so unless fully satisfied of the propriety of that course."

The testator's daughter, Lydia, was married to the plaintiff in 1842. At the time of the testator's death Lydia had no issue or children. In 1847, a son, James S. Wallace, was born, who survived his mother, and died, it was alleged, in 1887. In 1849, a daughter, Maggie, was born, and she died in 1851. It is as heir of Maggie that the plaintiff claims, as before stated, the one half of the farm in controversy as tenant for life.

This same clause of Barnett Gilleland's will was before this court in Peoples' Savings Bank v. Denig, 131 Pa. 241. The

plaintiff there claimed the same property as tenant by the curtesy which he now claims as father of his deceased minor child. The fact that he failed in that contention, does not necessarily show that he is wrong in this. If he mistook his title then it does not bar him from asserting it now. It is conceded that the will in question did not give an estate tail to his daughter. It was said in the opinion of the court in the case above cited: " It is hardly probable, though this is not important, in the view we take of the case, that he (the testator) meant to create an estate tail, however much the words used would seem to indicate it, for he evidently intended no benefit to his daughter's husband, and an estate tail would make him a tenant by the curtesy upon the death of his wife." We are still of opinion that the testator did not intend to give his daughter's husband any benefit under his will, and while we do not assert the general proposition that the husband could not, under any circumstances, be his daughter's heir, we feel quite safe in saying the testator did not intend that his son-in-law should take any part of his estate in case the said Lydia should die without leaving issue living at the time of her death. On the contrary, he expressly provides that in such case the said estate so devised to Lydia should revert back and be a part of his residuary estate.

The third specification presents the point which controls this case. It alleges that the court below erred in refusing to affirm defendant's fifth point. The point was as follows : " That under the will of said Barnett Gilleland, the failure of issue therein referred to is a definite failure of issue, and Maggie, who died in 1851, dying before Lydia, took no interest therein."

In 131 Pa., before referred to, we held that the legal title to the estate devised to Lydia was placed by the will in the hands of William Gilleland, as trustee, and that it was an active trust, under the authority of Barnett's Appeal, 46 Pa. 392. That it was something more than a trust to protect the separate use, is apparent from the fact, that it is provided in the fourteenth paragraph of the will, before cited, that at any time the said trustee shall think right, proper and prudent he may surrender any of the foregoing trusts ; " he may surrender and assign the same to Nancy Guthrie, Lydia Wallace, Euphemia Marshall, or either or all said trusts, but it is my wish that he would not do so unless fully satisfied of the propriety of that course."

This means, not merely that he had the power to surrender to Lydia Wallace a mere life estate, but that he might end and execute the entire trust by conveying to each of the testator's daughters the estate in fee, clear and discharged of the trust. It was therefore necessary for the trust to continue, and the legal title remain in the trustee up to the very moment of Lydia Wallace's death in order to carry out the will of the testator and execute the trust.

It was conceded that the whole legal title vested in the trustee on the death of the testator. The plaintiff contends, however, that upon the birth of James S. Wallace the legal title left the trustee and became vested in the said James S. Wallace; that he held the whole title to a vested remainder, until Margaret was born in 1849, when the title of James S. opened to let in the after-born Margaret; that he thereupon became the owner of the one half of the vested remainder, and from thenceforward to May, 1880, William Gilleland was only trustee to support the separate use trust of Lydia Wallace, and that, therefore, when Margaret died in 1851 her title went back to her brother, James S., subject to the trust and a life estate in her father which took effect in possession, or ought to have done so May 1, 1880, on the death of the said Lydia Wallace.

We cannot sustain this contention. The true interpretation of this will is to be gathered from within its four corners. An examination of it plainly shows a manifest intention on the part of the testator to clothe the trustee with the title so that he could execute the trusts of the will in accordance with the desire of the testator. The trustee had the power, as before observed, to surrender the entire trust, and by this one act to put an end to the interest of any one else. It is not to the purpose that the trustee never exercised this power. The will speaks from the death of the testator, and the power remained in the trustee up to the death of Lydia Wallace. The whole legal title was put in the trustee to preserve the estate for Lydia, and for such issue as she may leave surviving her at the time of her death, and in default of issue living at that time, then to carry it back to the testator's residuary estate. A careful consideration of the whole will leads us to the conclusion that the testator contemplated a definite failure of issue. It will be observed that there is no devise over, but Lydia's share,

upon the happening of the contingency referred to, is to revert to and become a part of the residuary estate of the testator.

In Miller's Estate, 145 Pa. 561, it was said by our Brother STERRETT: " But the courts have seized with avidity on any circumstance, however trivial, denoting an intention to fix the contingency at the time of the death: Seibert v. Butz, 9 W. 490. And accordingly, in Snyder's Ap., 95 Pa. 174, where the bequest was to H., and, if he should 'at any time die without issue, I then give and bequeath' over to all testator's children, it was held that the use of the words 'at any time' and 'then' imported a definite failure. So, when the time at which the devise over is to take effect is expressly or impliedly limited to a particular period within a life or lives in being and twenty-one years after, or if he die without leaving issue behind him, or leaving issue at the time of his decease, or if the devise over be of a life estate, which implies necessarily that such devisee may outlive the first estate, the testator has been considered as meaning a failure of issue within a fixed period, and not an indefinite failure: Eichelberger v. Barnitz, supra."

We do not think it necessary to discuss the numerous cases cited by the learned counsel for the appellee. This belongs to a class of cases where one case seldom rules another, for the reason that each will must be interpreted by itself, and does not depend to any great extent on prior interpretations of other wills.

The specifications of error are sustained. ·

Judgment reversed.