### BUCHANAN v. DENIG et al.

(Circuit Court, W. D. Pennsylvania. February 2, 1898.)

WILLS—CONSTRUCTION—TRUSTS.

Testator devised lands to his son "in special trust and confidence as trustee" of his daughter, with directions to permit her to occupy and enjoy the same for her separate use, free from the debts or control of her husband; the land at her death to descend to the issue of her body; if she left no issue, then to revert to the residuary estate. The trustee was authorized, if fully satisfied of the propriety thereof, to surrender the trust, and assign the same to the beneficiary, but this was never done. *Held*, that the children of the daughter took no interest whatever in the land until her death, and only on condition of surviving her. Wallace v. Denig, 25 Atl. 534, 152 Pa. St. 251, and Wilson v. Denig, 30 Atl. 1025, 166 Pa. St. 29, followed.

This was an action of ejectment by J. W. Buchanan against C. Denig and others. At the trial a special verdict for plaintiff was returned, subject to the opinion of the court upon a question of law reserved.

Montooth Bros. & Buchanan and J. M. Garrison, for plaintiff.
N. W. Shafer and J. A. Langfitt, for defendants.

ACHESON, Circuit Judge. Both parties claim title to the land in dispute through James S. Wallace, who acquired his title under the will of his grandfather, Barnet Gilleland, deceased. The plaintiff claims under a deed dated July 15, 1875, from the assignee in bankruptcy of James S. Wallace to B. F. Wilson, who, by deed dated July 12, 1895,

conveyed the land to the plaintiff. The defendants claim under a deed to the Woods Run Savings Fund & Loan Association, dated December 29, 1883, from the sheriff of Allegheny county, who sold the land as that of James S. Wallace on a judgment entered June 7, 1881. The question of law reserved, and upon which the case turns, is whether James S. Wallace, at the date of his bankruptcy, March 8, 1873, had an estate or interest under the will of Barnet Gilleland, deceased, in the said land, which passed by operation of law to his assignee. Barnet Gilleland died November 1, 1845, and left a will dated and executed on March 13, 1844. By the sixth paragraph of his will he devised the land in controversy as follows:

"Sixth. To my son William I hereby give and bequeath in special trust and confidence as trustee of my daughter, Lydia Wallace, the second choice (after my son James) of the above three allotments in Wilkins township; that he will permit the said daughter, Lydia, to occupy and enjoy the same for her separate use, not to be under the control or subject to the debts of her husband, but to enjoy all the rents, issues, and profits during her natural life, and at her death to descend to the issue of her body; but, if the said Lydia should die, leaving no issue, then the said estate to revert back, and be a part of my residuary estate,—the same to be in full of my daughter Lydia's part, except the bequest hereinafter made out of my residuary estate."

By the fourteenth paragraph of his will he provided as follows:

"Fourteenth. It is my desire and will that at any time my son William shall think right and proper and prudent, he may surrender any of the foregoing trusts. He may surrender and assign the same to Nancy Guthrie, Lydia Wallace, or Euphemia Marshall, or either or all of said trusts; but it is my wish that he would not do so unless fully satisfied of the propriety of that course."

Lydia Wallace, the beneficiary named in the sixth paragraph of the will, was married to James Wallace in 1842. She had by her said marriage issue two children, namely, James S. Wallace, who was born July 18, 1847, and a daughter, named Margaret, who was born in 1849, and died in infancy, in the year 1851. Lydia Wallace died in May, 1880. James S. Wallace was the only issue which survived his mother. He died in 1887. The power given to the trustee by the fourteenth paragraph of the will of Barnet Gilleland to surrender and assign the trust was never exercised.

The supreme court of Pennsylvania was called on to construe the sixth and fourteenth paragraphs of Barnet Gilleland's will in the case of Wallace v. Denig, 152 Pa. St. 251, 25 Atl. 534. That was an action of ejectment, brought by James Wallace, the surviving husband of Lydia Wallace, who therein claimed and sought to recover the undivided one-half of this land for his life, as statutory heir of his deceased infant daughter Margaret. He there contended that an estate in remainder was limited to the issue of Lydia Wallace by the sixth paragraph of the will of Barnet Gilleland, which became vested in James S. Wallace upon his birth, in 1847, subject to open to let in after-born children; that it opened at the birth of his sister, Margaret, in 1849, and took her in, vesting in her the remainder in fee in the undivided one-half of the land, which estate, at her death, in 1851, passed, under the intestate laws, to her father (James Wallace) for his life; and that he became entitled at the death of Lydia Wallace, in 1880, to the possession of the same. The supreme court of Pennsylvania rejected this view, deciding that James

Wallace had no interest in the land as heir of his daughter. The court held that the trust in William Gilleland was something more than a trust to protect a separate use in favor of Lydia Wallace; that the whole legal title was put in the trustee to enable him to carry out the expressed purposes of the testator; that the trustee had the power at any time before the death of Lydia to terminate and execute the entire trust by conveying to Lydia the estate in fee, and thus put an end to the interest of any one else; that the trustee further held the whole title in order to preserve the estate for Lydia, and for such issue as she might leave surviving her, and, in default of issue living at the time of her death, to carry it back to the testator's residuary estate. The court also ruled that from the whole scheme of the will it was apparent that the testator contemplated a definite failure of issue. The will of Barnet Gilleland again came before the supreme court of Pennsylvania in the case of Wilson v. Denig, 166 Pa. St. 29, 30 Atl. 1025, which was an action of ejectment for this land, brought by B. F. Wilson, the present plaintiff's alienor, against the present defendants. The court there adhered to its conclusions as expressed in its opinion in Wallace v. Denig, supra, and distinctly held that "during the life of his mother James S. Wallace had no estate whatever in this land, and therefore nothing passed by the sale in bankruptcy which took place during the lifetime of the mother." In each of these two cases, then, the decision of the supreme court of Pennsylvania was that under the will of Barnet Gilleland the children of Lydia Wallace took no estate or interest of any kind in the land in controversy until her death, and upon condition of surviving her.

The soundness of this conclusion is here earnestly controverted, and the plaintiff's learned counsel most ably contends that Barnet Gilleland devised to the issue of his daughter, Lydia, a remainder in fee (either legal or equitable), which was contingent at the death of the testator, but vested at the birth of issue, subject to open and let in other issue as they might subsequently come into being, and subject also to be divested by the death of the issue in the lifetime of Lydia; but that, even if the whole estate in fee, subject to Lydia's equitable life estate only, was in the trustee down to the death of Lydia, still James S. Wallace had at least a contingent interest by way of executory devise, which was subject to alienation and to execution in the lifetime of Lydia. The argument in support of these views is forcible, but not sufficiently so to induce a departure from the rulings of the supreme court of Pennsylvania. It is true that those decisions are not conclusive here. (Gibson v. Lyon, 115 U. S. 439, 6 Sup. Ct. 129; Barber v. Railway Co., 166 U. S. 83, 17 Sup. Ct. 488. They are entitled, however, to very great respect, and this court should incline to follow them. Id., 69 Fed. 501. Having regard to all the provisions of the will of Barnet Gilleland, I am not prepared to affirm that the construction which the state court has given to it is unreasonable, or violates any settled legal rule. At the date of the will and at the time of the testator's death Lydia Wallace was childless. It seems to be clear enough, then, that when the will took effect the whole legal title to the devised land passed to the trustee. Now, as the ultimate disposition of the property was made to depend upon the two contingen-

84 F.—55

cies,—first, of the birth; and, second, of the survivorship of issue,—it certainly is an admissible view that the estate which originally vested in the trustee was to remain in him in its entirety (unless he exercised his discretionary power to convey to Lydia) until the person who in the end should take was ascertained by the death of Lydia. I feel quite justified, then, in following the supreme court of Pennsylvania in holding that James S. Wallace took no estate whatever in this land until the death of his mother, in 1880, and hence that no interest therein passed to his assignee in bankruptcy. It results, therefore, that judgment must be entered in favor of the defendants non obstante veredicto.