## Shutt *versus* Rambo.

57.    149
27 SC   432

A testator devised to his daughter a farm "in fee," and gave other real estate in fee to other children; the concluding clauses of his will were as follows: "It is my will that should any of my children die without heirs, then the property hereby bequeathed to them shall revert to my estate. It is my will that all my other property, personal, real or mixed and wheresoever situated, not herein particularly mentioned and referred to, shall be sold by my executors, the proceeds divided equally among my children." *Held*, that the daughter took a fee.

January 21st 1868. Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ. STRONG, J., at Nisi Prius.

Error to the Court of Common Pleas of *Montgomery county*: No. 235, to January Term 1868.

This was an amicable action and case stated, entered January 2d 1868, between Emma P. Rambo, plaintiff, and Samuel Shutt, defendant. The case contained the following facts:—

The plaintiff is a daughter of Nathan Rambo, who died in 1858, leaving a will dated the 16th day of May 1857, and proved March 11th 1858. The said testator also left surviving him a widow named Ann Rambo and seven children, of whom Emma P. Rambo the plaintiff, who never was married, is one. The testator left also a very large estate, consisting principally of real estate, which he devised to his wife and children, and *inter alia* as follows:—

"Item 7. I give, devise and bequeath unto my daughter Emma Rambo, the farm, hereditaments and premises known as the Shainline farm, containing about 110 acres of land, in fee, charged and chargeable nevertheless with the annuity or yearly sum of $150, to be issuing and payable out of the said farm, hereditaments and premises, to my wife Ann Rambo, during her life, by two even and equal half-yearly payments in every year; the first of the said half-yearly payments to be made at the end of six calendar months next after my decease."

The whole of the said last will and testament is made part of this case.

On the 6th of October last past, the plaintiff sold to defendant the farm in the 7th item mentioned, under the following articles of agreement: "This agreement made the 6th day of October, A. D. 1867, between Emma P. Rambo, &c., and Samuel W. Shutt, &c., witnesseth, that said Emma P. Rambo, for the consideration hereinafter mentioned, has this day sold to said Shutt, all that certain farm of about 110 acres of land, known as the Shainline farm, in Upper Merion township, be the same more or less, and the said Emma hereby agrees to make and deliver to said Shutt a good and sufficient deed in law, and full possession of said farm and buildings thereon, on the 1st day of December, A. D. 1867,

[Shutt *v.* Rambo.]

free and clear of all encumbrances, except as hereinafter excepted, and in consideration of the premises said Shutt agrees to pay to said Emma P. Rambo the sum of $12,000, as follows:" &c.

On the 1st day of December, 1867, the plaintiff tendered defendant a deed for the above-described premises, which it is admitted was in all respects legal and valid, except that the defendant is advised and believes that under the said will of Nathan Rambo, the plaintiff does not hold a fee-simple title to said farm, whereupon he refused to accept the same. (See 24th item of said will.)

Should the court be of opinion that the plaintiff holds a fee-simple title thereto, then judgment to be entered for plaintiff, and specific performance of said agreement be decreed; should the Court be of opinion that the said plaintiff has not a fee simple in said farm, then judgment to be entered for the defendant.

The 24th and 25th clauses of the will are as follows:—

"Item 24th. It is my will that should any of my children die without heirs, then the property hereby bequeathed to them shall revert to my estate."

"Item 25th. It is my will that all my other property, personal, real or mixed, and wheresoever situated, not herein particularly mentioned and referred to, shall be sold by my executors, the proceeds divided equally among my children."

The court (Chapman, P. J.) entered judgment for the plaintiff, which the defendant, on a writ of error taken by him, assigned for error.

*G. N. Corson*, for plaintiff in error, cited German *v.* German, 3 Casey 116; Hitchcock *v.* Hitchcock, 11 Id. 393; Fulton *v.* Moore, 1 Id. 474; Walker *v.* Walker, 4 Id. 40; Criley *v.* Chamberlain, 6 Id. 162; Schoonmaker *v.* Stockton, 1 Wright 461; Brown's Estate, 2 Id. 289; McBride *v.* Smyth, 4 P. F. Smith 245.

*C. Hunsicker*, for defendant in error, cited Silknitter's Appeal. 9 Wright 365; Criley *v.* Chamberlain, 6 Casey 158; Schriver *v.* Meyer, 7 Harris 87; Wood *v.* Hills, Id. 513; Eichelberger *v.* Barnitz, 9 Watts 447; Langley *v.* Heald, 7 W. & S. 96; Maurer *v.* Marshall, 4 Harris 379; Haldeman *v.* Haldeman, 4 Wright 29; Hitchcock *v.* Hitchcock, 11 Casey 393.

The opinion of the court was delivered, January 30th 1868, by

THOMPSON, C. J.—The testator, Nathan Rambo, evidently intended, we suppose, to give a fee to each of his children in the lands devised to them respectively, for he expressly says so, and there could not be a shadow of a doubt about it, if it were not for the provision contained in the 24th clause of the will, which is as

[Shutt v. Rambo.]

follows: "It is my will that should any of my children die without heirs, then the property shall revert to my estate."

This is a clause, the effect of which was probably unknown to the testator altogether, for there is the strongest implication on the face of the will that he intended a disposition of his entire estate, to take effect on his death. But if the effect of the clause be as contended for, contingent interests would exist, and might continue to exist for a quarter of a century, and at that remote period the duties of the executors might still be in requisition.

It will be observed that there is no devise over in default of "heirs" (evidently meaning "issue"), but only that the estate devised should fall back into the testator's estate. In that event, by clause 25th, it would have to be sold by the executors, and the proceeds distributed among the testator's children. It is inconceivable that the testator meant to keep up administration indefinitely, almost, for such a purpose; or intended to make every bequest and devise to his children or friends contingent by this clause, when he had used clear words indicating the contrary. With a general intent so distinctly evinced, I think we should regard the provision as a similar provision was regarded in Schoonmaker v. Stockton, 1 Wright 461, as having reference to the death of any of the devisees in the lifetime of the testator. It may have effect in that way, but in no other, without thwarting the general intent of the devisor.

But giving the words of the 24th clause all that could possibly be claimed for them, to wit, an implication of a limitation to issue by the words "die without heirs," equivalent to "dying without issue," as in Eichelberger v. Barnitz, 9 Watts 447, and kindred cases, the devise to Emma Rambo, the plaintiff below, would be a fee tail, which by the Act of 27th April 1855 would be turned into a fee simple, the will bearing date 27th of May 1857. That the word "heirs" meant "issue," must be inferred, in the presence of the fact, that her brothers and sisters were living and would be her heirs. It must, therefore, have been "issue" that was meant by the words. In either view of the case, the plaintiff below was vested with the fee simple of the property in question, and could, for anything disclosed on this record, convey such a title to the defendant below.

The judgment in the court below is affirmed.