FIRST NAT. BANK et al. v. DE PAUW et al.

(Circuit Court, D. Indiana. July 29, 1896.)

No. 9,169.

CONSTRUCTION OF WILL—DEFEASIBLE ESTATE—DEATH WITHOUT ISSUE.

Testator, after having used expressions which, though containing no words of inheritance, would, standing by themselves, have given a fee-simple absolute to his two grandsons, added a provision "that the property willed by me to the said grandchildren should be held in common, and, if either of them should depart this life without leaving living issue, then and in that case the survivor, or the heirs of his body, shall inherit all the property and estate devised to both of them." *Held*, that the latter words referred to a death either before or after testator's death, and that each grandson took a base or determinable fee, defeasible by his death without living issue, leaving the other grandson surviving.

Bill by the First National Bank of Covington, Ky., and others, against Charles W. De Pauw and others.

On May 30, 1887, Elijah Newland made the following will:

"In the name of God, Amen. I, Elijah Newland, being of sound mind and disposing memory, do make this, my last will and testament. (1) I commend my soul to God, who gave it, and my body to the earth, from whence it came. (2) It is my desire that when I shall depart this life that I may be buried in a plain, walnut coffin, without any expensive or vain show. (3) I direct my executors to pay all just debts that may be owing by me. (4) I give and bequeath to my dearly beloved wife, Margaret Ann Newland, my town residence in the city of New Albany, on lots as follows: The east thirty-four feet of lot numbered twelve, the whole of lot numbered thirteen, and the western six feet of lot numbered fourteen, all in block numbered twenty-eight, of the White Hill tract, with all household and kitchen furniture; also my family carriage and horse; also thirty thousand dollars in bonds, stocks, notes, and mortgages, to be selected by her. (5) I give and bequeath to my two grandsons, Newland T. De Pauw and Charles W. De Pauw, all my remaining estate, real, personal, and mixed, consisting of indebtedness due me in bonds, mortgages, and notes of hand, and all my lands situate in Floyd, Washington, Lawrence, and White counties, and any lands which may be possessed by me, and all my chattels upon the farms in Floyd, Washington, and Lawrence counties. (6) I have heretofore given to Newland T. De Pauw real estate to the value of ten thousand dollars, and I have given to Charles W. De Pauw cash to the amount of six thousand dollars. I desire that of the property devised, C. W. De Pauw should have four thousand dollars, and that the property willed by me to the said grandchildren should be held in common, and, if either of them should depart this life without leaving living issue, then and in that case the survivor or the heirs of his body shall inherit all the property and estate devised to both of them. (7) It is my desire that, should my dear wife desire it, that in place of the town residence bequeathed to her, that she should take ten thousand dollars in stocks or mortgages, etc., and that the town residence should, in that case, go to my grandchildren Newland T. De Pauw and Charles W. De Pauw. (8) I hereby appoint my dear wife, Margaret Ann Newland, Newland T. De Pauw, and Charles W. De Pauw executors of this, my last will and testament, and I desire that no security be required of them or their bonds as executors.

"[Signed]                                      Elijah Newland."

The testator died December 16, 1894. The will was proved and admitted to probate December 28, 1894, and James G. Harrison was appointed administrator with the will annexed by the Floyd circuit court, January 22, 1895. Margaret Ann Newland, wife of the testator, died August 20, 1893. The will is in the handwriting of, and was framed by, the testator. Newland T. De Pauw was married October 15, 1879, and has two children,—Kate F., born August 2, 1880; and Jennie, born April 1, 1886. Charles W. De Pauw was married February 22, 1888, and has never had any children. Newland T. was born September 5, 1856, and Charles W., June 15, 1859. The fair value of the property disposed of by the will is $100,000, consisting, approximately, one-half of personal and one-half of real property. At the date of the will, at the death of the testator, and at the present time this property consisted of bank stock, notes secured by mortgage, live stock and chattels on the farms, and other personal property, and of various farms situated in Indiana. The complainants have recovered judgments against Charles W. De Pauw for large amounts, and executions have been levied upon the interest of Charles W. De Pauw in the real estate hereinbefore devised. The testator, at and long before his death, had been a citizen and resident of Indiana. He had born to him only one child, the mother of the devisees, who died before the making of the will. The testator had been a physician all his life, and was an old man when he died.

W. A. Ketcham, Miller, Winter & Elam, E. K. Stallo, W. A. Van Buren, and Merrill Moores, for complainants.

Mason & Latta, for defendant Bank of Commerce.

A. Dowling, C. L. Jewett, and A. C. Harris, for defendants Chas. W. De Pauw, Letitia De Pauw, Newland T. De Pauw, and James G. Harrison.

Voight & Stotsenburg, Mitchell & Mitchell, and John R. Wilson, for defendants Benjamin E. Cravens, Sarah A. Johnson, and Citizens' Bank of Salem.

Jewett & Jewett, and A. C. Harris, for defendants Daniel Prosser and Timothy Goulding.

S. A. Hays, for defendant Central Bank of Greencastle.

Elliott & Elliott, for defendant Andrew J. McIntosh, assignee.

Jewett & Jewett, A. Dowling, and A. C. Harris, for defendant Carrie De Pauw.

BAKER, District Judge. In every case involving the construction of a will it is alike dictated by justice, common sense, and the rules of law that the first important inquiry shall be, what is the true intent and meaning of the testator? And, if that can be satisfactorily discovered, the next is, can that intent be carried into effect, consistently with the rules of law? If it can, then the true intent and meaning of the testator must prevail.

"Very few classes of questions are more frequent or more perplexing in the courts than the construction of wills. If rules of construction laid down by the courts of the highest character, or the authority of adjudged cases, could meet and solve these difficulties, there would remain no cause of complaint on that subject, for such is the number and variety of these opinions that every form of expression would seem to be met. Especially is this true of the question whether a vested remainder in interest is created after a particular estate, or whether the first taker has a fee simple or full ownership of the property devised. And, in point of fact, when such a question arises, the number of authorities cited by counsel, supposed to be conclusive of the case in hand, is very remarkable. Unfortunately, however, these authorities are often conflicting, or arise out of forms of expression so near alike, yet varying in such minute shades of meaning, and are decided on facts or cir-

cumstances differing in points, the pertinency of which is so difficult in their application to other cases, that the mind is bewildered, and in danger of being misled. To these considerations it is to be added that, of all legal instruments, wills are the most inartificial, the least to be governed in their construction by the settled use of technical legal terms; the will itself being often the production of persons not only ignorant of law, but of the correct use of the language in which it is written. Under this state of the science of the law, as applicable to the construction of wills, it may well be doubted if any source of enlightenment in the construction of a will is of much assistance other than the application of natural reason to the language of the instrument under the light which may be thrown upon the intent of the testator by the extrinsic circumstances surrounding its execution, and connecting the parties and the property devised with the testator and with the instrument itself." Clarke v. Boorman's Ex'rs, 18 Wall. 493, 502.

The testator, after having used words in the fifth clause of the will, which, standing by themselves, would have given a fee-simple absolute to his two grandsons, added, in the sixth clause, the following:

"That the property willed by me to the said grandchildren should be held in common, and, if either of them should depart this life without leaving living issue, then and in that case the survivor, or the heirs of his body, shall inherit all the property and estate devised to both of them."

This clause cannot be regarded as a devise of cross remainders to the two grandsons, for no remainder, either vested or contingent, can be limited after an estate in fee. It is self-evident that there can be no remainder limited after an absolute fee, and Lord Coke lays it down that no remainder can be limited after a base or determinable fee. 1 Inst. 18a; 10 Rep. 97b. The limitation over to the survivor is, if anything, an executory devise, and is not too remote, for it must take effect, if at all, within the period of two lives in being. That in this limitation an indefinite failure of issue of the grandsons was not contemplated is manifested by the testator's use of the words, "depart this life without leaving living issue." There is a marked difference between a gift over on the first taker dying "without issue" or "without lawful issue," and a gift over on his dying "without leaving living issue." The latter, if it means anything, must mean lawful issue living beyond the death of the first taker. It is much more expressive than the phrase "leaving no issue behind him," which, in Porter v. Bradley, 3 Term R. 143, was held to denote a definite failure of issue. Porter v. Bradley has always been recognized as authority. Eichelberger v. Barnitz, 9 Watts, 447; Nicholson v. Bettle, 57 Pa. St. 384. The whole question, then, is whether the words, "if either of them should depart this life without leaving living issue," refer to the event of death before that of the testator, or to a death at any time, whether before or after the testator's death. If the former is the true meaning, the gift over to the survivor is substitutionary merely, depending on the contingency of the death of either of the primary devisees in the lifetime of the testator, and designed to prevent a lapse; and upon that construction, both of the grandsons having survived the testator, the contingency upon which the survivor was to take has gone, and each took an absolute estate in fee. If, on the other hand, the words refer to a death at any time, under

the circumstances mentioned, then, on the death of the testator, the grandsons took a base or determinable fee, coupled with a contingent interest in favor of each in the estate devised to the other, by way of executory devise, which, on the death of either "without leaving living issue," would be converted into an absolute fee in the survivor.

It is said by Jarman (3 Jarm. Wills, 5th Am. Ed. by Randolph & Talcott, 605 et seq.) to be an established rule that where a bequest is simply to one person, and, in case of his death, to another, the primary devisee surviving the testator takes absolutely. This rule applies both to real and personal property, and, so far as I can discover, the authorities in this country, and especially in this state, uniformly sustain the construction that in a devise or bequest simpliciter to one person, and, in case of his death, to another, the words refer to a death in the lifetime of the testator. It is said in support of this construction that as death, the most certain of all things, is not a contingent event, but the time only, the words of contingency in a devise of the character mentioned can be satisfied only by referring them to a death before a particular period; and, as no other period is mentioned, it is necessarily presumed that the time referred to is the testator's death. This construction, although supported by somewhat refined and artificial reasoning, is doubtless, in most cases, conformable to the true intention of the testator. It prevents the disinheritance of a testator's posterity, which would sometimes occur if the death of the primary devisee at any time was held to be within the meaning of such a devise. This rule of construction is inapplicable to the present will for the reason that the death referred to is coupled with another contingent event which may or may not happen, namely, a death "without leaving living issue."

There is another class of cases in which an alternative limitation depending on the death of a primary devisee is also held to refer to a death in the lifetime of the testator, although this class of cases is not within the reason upon which the class of cases above referred to is supported. A case of the second class is where a devise is made to one person, and, in case of his death without issue, or without children, or without having a lawful heir, to another. In this class of cases it is manifest that the event on which the gift over is to take effect is clearly pointed out, and is uncertain and contingent, namely, death without issue, or without children or lawful heirs; and it is not necessary, in order to give effect to the words of contingency, to refer the death to one happening before the testator's death. Nor is such a construction necessary to prevent the disherison of issue, for the reason that it is only in the event that there is no issue that the gift over takes effect. It is said by Jarman (3 Jarm. Wills, 5th Am. Ed. by Randolph & Talcott, 640 et seq.) that the general rule is that, where the context is silent, the words referring to the death of the prior legatee, in connection with some collateral event, apply to the contingency happening as well after as before the death of the testator. The rule thus stated by him relates to personal property, and is based on the

later English decisions upon the construction of bequests of personalty, which seem to have modified the earlier cases. The tendency of later cases is to hold that there is no sound distinction in the construction of bequests of personal property and devises of real estate. However, where real estate is devised in terms manifesting an intention that the primary devisee shall take an absolute fee on the death of the testator, coupled with a devise over in case the first taker dies without issue, it has generally been held in England and in this country, and especially in this state (Fowler v. Duhme [Ind. Sup.] 42 N. E. 623), that the words refer to a death without issue in the lifetime of the testator, and that the primary devisee surviving the testator takes an absolute estate in fee simple.

This rule of construction in cases of this class is bottomed largely upon the disinclination of the courts to cut down a fee once distinctly given, unless later words of the will in clear and manifest terms require it. It is a rule resting rather upon authority and precedent than upon reason, for it is by no means certain that it was not the intention of the testator to control the ultimate devolution of the title, after it had been enjoyed during life by the first taker, in case he died without issue. Such a construction seems to harmonize better with the popular use of the words, and to give a natural, rather than an artificial, effect to the language employed. The rule thus established, and resting upon precedent, only applies when the context of the will is silent, and affords no indication of an intention other than that manifested by the words of absolute gift, coupled with a gift over in case of death, or of death without issue, children, or heirs, or the like. As the rule is arbitrary and artificial, there is a strong tendency to seize upon slight circumstances in the will to vary the construction, and to give effect to the language of the will according to its natural import, and in harmony with the popular understanding of the language employed. As wills are often written by illiterate scriveners, unfamiliar with the artificial rules of legal construction, and at times when the testator is in extremis, it is important that the language employed in them should not be wrested from its natural import, lest thereby the intention of the testator should be defeated. In the present case, the will contains no words of inheritance in connection with the primary bequest. While the language employed in the fifth clause of the will, standing alone and uninfluenced by the language employed in other parts of it, is sufficient to give an absolute fee, yet no violence is done to any words there employed to construe them in connection with the sixth clause of the will as creating a base fee in the first takers. The language employed in the sixth clause of the will, in my opinion, indicates that the death referred to was one which should happen after, and not before, the death of the testator. The testator's language that the property willed by him to his grandchildren "should be held in common" clearly points to a holding subsequent to the testator's death. They could not hold the property devised to them in common while the testator was in life. The words immediately following strengthen this view. He adds: "And if either of them should depart this life

without leaving living issue, then and in that case the survivor, or the heirs of his body, shall inherit all the property and estate devised to both of them." Manifestly the time when the survivor is to take is when one of the devisees shall die without leaving living issue. If either dies without leaving living issue, "then"— meaning at that time—the survivor shall take. That the word "then" is used as an adverb of time is manifested by the words "and in that case," which immediately follow. To limit the time of the death referred to to a period anterior to the testator's death seems to me to do violence to the plain and obvious meaning of the language employed. I have examined the case in this state, and the numerous cases elsewhere, which the learned counsel have cited, and I have found none which, in my opinion, would justify me in holding that the death referred to in the will was one which should occur during the lifetime of the testator. The conclusion to which I have arrived is strongly supported by the case of Britton v. Thornton, 112 U. S. 526, 5 Sup. Ct. 291. In this case it was held that the estate devised to Eliza Ann Thornton, though without words of inheritance, was not an estate for life, but was an estate in fee. And it was further held that these words in the will, namely, "provided that, should the said Eliza Ann die in her minority, and without lawful issue then living, the lands hereby devised shall revert and become a part of the residue of my estate," created an executory devise, which, upon her death under age, and without issue then living, defeated the fee. In this case the court said:

"When indeed a devise is made to one person in fee, and, 'in case of his death,' to another in fee, the absurdity of speaking of the one event, which is sure to occur to all living, as uncertain and contingent, has led the courts to interpret the devise over as referring only to death in the testator's lifetime. 2 Jarm. Wills, c. 48; Briggs v. Shaw, 9 Allen, 516; Lord Cairns in O'Mahoney v. Burdett, L. R. 7 H. L. 388, 395. But when the death of the first taker is coupled with other circumstances which may or may not ever take place, as, for instance, death under age, or without children, the devise over, unless controlled by other provisions of the will, takes effect, according to the ordinary and literal meaning of the words, upon death, under the circumstances indicated, at any time, whether before or after the death of the testator. O'Mahoney v. Burdett, above cited; 2 Jarm. Wills, c. 49."

My conclusion is that Charles W. De Pauw took, under his grandfather's will, a base or determinable fee, defeasible by his dying, his brother surviving, without leaving living issue at the time of his death; that his issue, should he leave any surviving him, would take by inheritance from him; and that a conveyance by him in his lifetime would be effectual to bar his issue, and that an indefeasible title in fee could be conveyed, and the contingent expectant estate limited over to the survivor cut off, by the joint conveyance of the two devisees. A decree may be prepared in conformity with the foregoing views.