## Eichelberger *against* Barnitz.

If a devise be made to one in fee, and "if he die without issue," or "on failure of issue," or "for want of issue," or "without leaving issue," then over to another in fee, the estate of the first taker is a fee tail, which, if he have issue, passes to them *ad infinitum* by descent as tenants in tail; and the entailment may be barred by a deed executed and acknowledged for that purpose.

ERROR to the common pleas of *Adams* county.

Eichelberger and others against Charles Barnitz, Frederick Wentz, and Adam Carle. This was an action of ejectment, in which the following special verdict was found:

The plaintiffs named are the legal heirs and representatives of Mary and Susannah Carle, the daughters of Michael Carle, late of the county of Adams, deceased, and named in his will.

The said Michael was seised of the said lands mentioned in the ejectment in his lifetime by an indisputable title.

On the 22d of February 1811, he made his last will and testament in due form, which will is here to be inserted as part of this special verdict. He died and the will was duly proved, &c., the 23d day of May 1814.

On the same 22d of February 1811, the deed referred to in the will was executed in the manner therein mentioned, and that deed is also made part of this verdict. It was recorded in Adams county the 24th of January 1840. The original deed to make part of this verdict, and here to be inserted.

Deed of Henry Carle to Adam Carle and Charles Barnitz, dated the 11th of March 1814, duly recorded, here to be inserted.

March 31, 1814, on motion the said deed was ordered to be recorded in York county in the common pleas, as appears by the certificate on said deed the 31st of March 1814, recorded in the recorder's office. April 11, 1814, on motion, ordered to be recorded in the common pleas of Adams county; 11th of April 1814, per certificate in recorder's office.

Henry Carle never married. He took a bond from Adam Carle and Charles Barnitz for the consideration money mentioned in the deed from him to them, which bond was conditioned for the payment of the interest of the said sum annually to him during his life, and at his death the bond was to become void. He appointed Joseph Carle, of Abbottstown, his agent, and put the bond into his hands to receive the interest. Adam Carle and Charles Barnitz also paid the legatees of Michael Carle 500 dollars, (the half of 1000 dollars charged on the land of Adam and Henry,) and paid

[Eichelberger v. Barnitz.]

to Henry Carle in hand 500 dollars to pay his debts, (a judgment of 200 dollars having previously been obtained against him.) Henry Carle died about twelve years ago unmarried, and without issue, his said sisters then surviving him, but who are since dead, leaving the heirs and representatives named as plaintiffs. Joseph Carle gave the bond to John Sailor after the death of Henry. John Sailor is dead, and the bond is mislaid or lost. The defendants are in the possession of the two tracts, and have been so ever since the date of the deed to them. If under these facts the plaintiffs are in law entitled to recover, the judgment to be entered for them according to their respective rights with costs, and the sheriff of Adams county, in that event, to execute a writ of *habere facias possessionem.* If in law the plaintiffs are not entitled to recover on either of them, judgment to be entered for the defendants.

Extract from the will of Michael Carle:

"And concerning my lands and plantation whereon I now dwell, (situate as above mentioned,) I do hereby mention that I have sold the same unto my said two sons Adam Carle and Henry Carle, (in an equal right to them,) and have also made a deed of conveyance (unto them) for the same, but I intend to keep the same in my hand until my decease; but after my decease the title of the same shall be vested in my said two sons, unto their heirs and assigns forever, upon condition that they doth make, or else sufficiently secure the following mentioned payments for the same, that is to say: that they shall pay and give out for the same the sum of one thousand pounds, each of them the sum of five hundred pounds for his share, (lawful money of Pennsylvania;) and that, besides the maintenance of my wife as shall hereafter be said, and the money to be paid in manner following, namely: the sum of one hundred pounds, part thereof with interest to be paid on the twenty-second day of February, in the year of our Lord one thousand eight hundred and thirteen. Wherefore a bond is unto me given, and the further sum of ninety pounds to be paid on the first day of May, in the year of our Lord one thousand eight hundred and fifteen. Wherefore also a bond is unto me given, and then the remainder of the said thousand pounds to be paid in manner following, namely: eighty pounds in a year, each of them the sum of forty pounds, and that in manner following, namely: on the first day of May, in the year of our Lord one thousand eight hundred and seventeen, they shall pay the sum of forty pounds unto my daughter Anna Mary, now the wife of John Sailor, or her heirs, and on the said day or time a like sum as forty pounds unto my daughter Susannah, now the wife of Adam Eichelberger, or her heirs, &c., and so forth, yearly; on the first day of May the said sum of forty pounds to be paid unto each of them till each of them has received the sum of three hundred pounds, which shall then be their full share out of my real estate; and further, my will is, that if the two girls that live with me now, namely, Catherine Matter and Elizabeth Matter, daugh-

[Eichelberger v. Barnitz.]

ters of my daughter Magdeline, deceased, namely, if they stay by me and my wife till to our decease, or till they be married, then the sum of seventy pounds shall be paid out of my estate unto each of them, and that in manner following, namely: in the year when my two daughters above said, namely, Anna Mary and Susanna doth receive the last part of their three hundred pounds, that then in said year the sum of forty pounds will remain of the money to be paid by my two sons to the meaning aforesaid, which said forty pounds shall then be paid to said Catherine Matter, in part of her seventy pounds, in the said year as my two daughters receive the last of their three hundred pounds; and in the next year after, the sum of thirty pounds shall be paid to said Catherine to fill her seventy pounds as aforesaid; and, in the same year, the sum of fifty pounds shall be paid to Elizabeth Matter in part of her seventy pounds as aforesaid; and then, in the next year after, the remaining sum of twenty pounds shall be paid to said Elizabeth to fill up her seventy pounds as to the meaning aforesaid; but then my will is, that the said two girls shall not have a right to make a charge against me or my estate for year wages or hire; and my will further is, because there being yet seven children more of my daughter Magdaline, deceased, my will is that each of them shall have the sum of ten pounds out of my estate in full of their share out of my estate, and these to be paid off as soon as can be after the others is paid off as aforesaid, and that according as the money is to be paid by my two sons as aforesaid; and further, my will is, because my son Henry is not yet married, that if he should die without leaving any lawful issue, that then his full share shall fall or go in equal share to my other three children, Adam and Anna Mary and Susanna, to one of them as much as to the other."

On the same day Michael Carle and wife, executed a deed of conveyance for the same lands to his said two sons, which recited his will and conveyed subject to it.

On the 11th of March 1814, Henry Carle executed a deed for his moiety of the said lands to Adam Carle and Charles Barnitz, for the purpose of barring the estate-tail, which was duly acknowledged in open court and recorded according to law.

Upon these facts the court below (Durkee, president) rendered a judgment for the defendants.

*Reed*, for plaintiff in error, cited 4 *Kent Com.* 454; 7 *Law Lib.* 21; 8 *Law Lib.* 50; 3 *Term Rep.* 143; 8 *Law Lib.* 64; 7 *Term Rep.* 595; 17 *Serg. & Rawle* 293; 4 *Kent Com.* 270.

*Stevens*, for defendant in error, cited *Fearn on Rem.* 476; 2 *Pow. Dev.* 564; 9 *Vez.* 202; 22 *Law Lib.* 302; 3 *Serg. & Rawle* 476; 6 *Watts* 21.

The opinion of the court was delivered by

SERJEANT, J.—Questions as to the effect of words in wills similar to those used in the present one, in creating an estate tail in the first taker, or an estate in fee with an executory devise over, have been so frequent, that their construction must be considered as settled by authorities, which we are not at liberty to subvert, even if we could flatter ourselves with the idea, that we could delineate a more perfect system on this refined subject, than that which the existing law establishes. The principle has now become a settled rule of property, in relation to lands, that if a devise be made to one in fee, and if he die without issue, or on failure of issue, or for want of issue, or without leaving issue, then over to another in fee, the estate of the first taker is a fee tail, which if he have issue, passes to them *ad infinitum* by descent as tenants in tail. The estate vests in the first taker fully, and to all intents and purposes as a fee tail, and any devise over after the failure of such, must of course be after an indefinite failure of issue, and bad as an executory devise. It is good as a vested remainder, subject to be barred by a fine or recovery, or deed executed by the tenant in tail, under the act of assembly.

The case of Clark *v.* Baker, 3 *Serg. & Rawle* 470, is an authority in point, in the present case. There one devised all his plantation to his daughter and grand-daughter, to hold to them and the survivor of them, and to their lawful issue for ever, share and share alike, in two equal shares, and if either of them should die *without leaving lawful issue* of their bodies; then to the survivor and her lawful issue forever: and further empowered D. W. and his daughter to sell all his lands, if they should judge it more advantageous for his daughter and grand-daughter, to have the interest arising therefrom, than to rent it, and gave the interest in a similar manner, and it was held, that the daughter and grand-daughter, took estates tail in possession, with vested cross-remainders in tail to each, and a vested remainder in fee to D. W. In Doe *v.* Griffith, 4 *Maule & Sel.* 61, land was devised to R. D. the testator's eldest son and his heirs, but if it should happen that R. D. *should die and leave no issue*, then to the testator's son W. D. and his heirs, and if he should die without issue, then to the testator's son E. D. It was held, that R. D. took an estate tail. See *Fearne Cont. Rem. & Ex. Dev.* 474, note; 2 *Pow. Dev.* 564.

The exceptions to the application of the general rules are, either in cases of personal estate, in which the construction is more liberal in favour of executory devises; or when the time at which the devise over is to take effect, is expressly or impliedly limited to a particular period, within a life or lives in being, and twenty-one years after; as where the contingency is, if the first taker die without issue before arriving at twenty-one, or if he die unmarried and without issue, or if he die without leaving issue *behind him*, or living at the time of his decease, or if the devise over be of a life-estate, which

implies necessarily, that such devisee over may outlive the first estate ; in all these cases, the testator has been considered as meaning a failure of issue within a fixed period, and not an indefinite failure of issue. But without some such circumstance to distinguish the case, it must be considered as falling within the particular cases of the same kind already decided, as well as the general course of reasoning adopted by the judges in analogous cases.

It has been urged, that the present case falls within the exceptions, because the testator prefaces the devise by the words, "because my son Henry is unmarried," which manifests an intention to make the devise over contingent, on his dying without leaving issue and unmarried. But we do not think this sufficient to change the settled construction which such a devise has received. For though it is true he assigns this reason why he makes the devise, yet he limits it at the same time merely to his dying without leaving issue, looking to the possibility of his marrying and having issue capable of inheriting from him an estate tail indefinitely, which of course must, in order to transmit it by descent, vest in him as tenant in tail in the first instance.

On the will, therefore, without considering what might be the effect of the conveyance to him by the testator, we are of opinion, that Henry Carle took an estate tail which with all remainders over he barred by his deed.

Judgment affirmed.