# BARBER *v.* PITTSBURGH, FORT WAYNE AND CHICAGO RAILWAY COMPANY.

## CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 431. Submitted May 7, 1896. — Decided March 1, 1897.

A single verdict and judgment in ejectment, when not conclusive under the laws and in the courts of a State, is no bar to a second action of ejectment in the courts of the United States.

When the construction of certain words in deeds or wills of real estate has become a settled rule of property in a State, that construction is to be followed by the courts of the United States in determining the title to land within the State, whether between the same or between other parties.

A single decision of the highest court of a State upon the construction of the words of a particular devise is not conclusive evidence of the law of the State, in a case in a court of the United States, involving the construction of the same or like words, between other parties, or even between the same parties or their privies, unless presented under such circumstances as to be an adjudication of their rights.

In Pennsylvania, under a will executed and taking effect before the passage of the statute of 1833, by which "all devises of real estate shall pass the whole estate of the testator in the premises devised, although there be no words of inheritance or of perpetuity, unless it appear by a devise over, or by words of limitation or otherwise in the will, that the testator intended to devise a less estate," and beginning with the statement that the testator was desirous of making a distribution of his property in the event of his decease, a devise of a parcel of land, without words of inheritance, gave an estate in fee, unless qualified by other provisions of the will.

A devise over in the event of a married woman "dying without offspring by her husband" is equivalent to a devise in the event of her "dying without issue."

In Pennsylvania, in a will executed and taking effect before the statute of 1855, enlarging estates tail into estates in fee, a devise of certain lots of land to A in fee, and "in the event of A dying unmarried, or, if married, dying without offspring by her husband, then these lots are to be sold,

and the proceeds to be divided equally among the heirs of B," looked to an indefinite failure of issue of A, and gave A an estate tail.

A power to sell land upon the expiration of an estate tail, and to divide the proceeds among persons then ascertainable, is not within the rule against perpetuities.

In a will devising certain land to A, and, if A die without issue, "then to be sold and the proceeds divided equally among the heirs of B," and directing the residue of the testator's estate to be sold and the proceeds divided into sixteen shares, of which two are given to B and two others to "the heirs of B," both B and his children being alive at the time of the testator's death, the word "heirs" in the specific devise applies either to children or to more remote descendants of B, whichever may be his heirs if he be dead, or his heirs apparent if he be living, when the devise takes effect.

Oral testimony to a testator's state of health at the time of publishing his will, or to his length of life afterwards, is incompetent to control the construction or effect of devises therein.

THIS was a certificate from the Circuit Court of Appeals for the Third Circuit of questions on which it desired the instruction of this court, and, as originally made, was (omitting the words printed in brackets below) as follows :

"This was an action of ejectment, and comes before this court on a writ of error to the United States Circuit Court for the Western District of Pennsylvania, which entered judgment for the defendants.

"First. The parties to the action both claimed title to the land in controversy under the will of James S. Stevenson, deceased, dated March 11, 1831, which is in the words following, to wit:

"'I, James S. Stevenson, of the city of Pittsburgh, in the State of Pennsylvania, aged fifty years on the 12th day of January, 1831, reflecting on the certainty of death, and desirous of making a distribution of my property in the event of my decease, do hereby declare this writing to be my last will and testament, made this twelfth day of March in the year of our Lord one thousand eight hundred and thirty-one.

"'I give and bequeath to Amanda Stephens, daughter of Margaret Stephens, lots 67, 68, 69 and 70, in the city of Pittsburgh, in their full extent, bounded by Penn street, Wayne street, the Allegheny river and by lot 71. . Said Amanda Stephens

is now five years old (born April 7, 1826). ——— Stephens and ———, his wife, the parents of Amanda's mother, live near Connellsville, in Fayette county, Pennsylvania.

"'In the event of Amanda dying unmarried, or, if married, dying without offspring by her husband, then these lots are to be sold, and the proceeds to be divided equally among the heirs of John Barber, of Columbia, Pennsylvania.

"'I give and bequeath to John Barber, of Columbia, and to his heirs, the lots in the city of Pittsburgh, numbered 71 and 72, bounded by Penn street, by lot 70, by the Allegheny river and by lot 73.

"'I give and bequeath to Mary Livingston's children the lot 74 in the city of Pittsburgh. And to her unmarried sister, Eliza Stevenson, I give and bequeath the lot 73 in the city of Pittsburgh, and in the event of her death the lot to go to her sister's children. Mary Livingston and Eliza Stevenson are daughters of the late Colonel S. Stevenson, son of Robert Stevenson, of York county, Pennsylvania.

"'I give and bequeath to the sons of James Stevenson, formerly of York county, but who died in Lycoming county in 1810 or 1811, the brick and other buildings, with the ground on which they are erected, situated at the corner of Wood and Fifth streets, Pittsburgh. These sons are Stephen, Manning, Reuben, Samuel and I. Stevenson.

"'All the remainder of my property to be sold, and, after paying my debts, to be divided into sixteen shares, and to be disposed of as follows: To Amanda Stephens, one share; to Mary Livingston, one share; to Eliza Stevenson, one share; to Stephen Stevenson, within named, one share; to James Wright, of Columbia, or his heirs, two shares; to John Barber, of Columbia, two shares; to Ann Elliott, formerly Ann West, now wife of Rev. Mr. Elliott, of Washington county, one share; to Jane E. Thecker, niece of the late Rev. Mr. Kerr, one sixteenth (or one share); to the heirs of John Barber, of Columbia, two shares; to the heirs of James Wright, of Columbia, two shares; to Charles Avery, J. M. Snowden and John Thaw, to be divided equally, two shares.

"'I hereby constitute and appoint the said Charles Avery,

J. M. Snowden and John Thaw, and John Barber, the executors of this my will.

" 'Signed at Pittsburgh this 11th day of March, 1831.

" 'JAS. S. STEVENSON.

" ' Witness :

" ' GEO. OGDEN,

" ' J. S. CRAFT.' "


" Second.   That on October 16, 1831, when confined to his room by sickness, [and after a dangerous illness for two weeks preceding his death,] the testator [though he had theretofore signed his will] first published [the same] *his will* in the presence of witnesses, whom he called to attest it, and a few hours thereafter died ; and this will, on October 18, 1831, was duly probated ; [which facts as to the time and circumstances of publication were not found by the special verdict, on which judgment was entered in the ejectment suit in the state courts of Pennsylvania].

" Third.   That the said Amanda Stephens, then a child of five years of age, survived the testator, and in 1847 intermarried with Samuel Haight; that in 1848 she and her husband executed a deed, intended to bar a supposed estate tail in the land covered by the devise, which, upon the assumption that she had taken an estate tail, would have been sufficient for that purpose; that she had children by her said husband, who, as well as her husband, died in her lifetime, and that she died [never having married again,] on September 21, 1891.   [But she and her husband in their lifetime, and after said steps to bar the entail, conveyed in fee simple to the defendants and others the property here in dispute.]

" Fourth.   That, at the date of the death of the testator, John Barber was alive, married and had children, some of whom are plaintiffs in this action.

" Fifth.   That on March 20, 1893, S. Duffield Mitchell, administrator *de bonis non cum testamento annexo* of James S. Stevenson, deceased, brought an action of ejectment against these defendants in the court of common pleas in and for Allegheny county, Pennsylvania, to recover the land here in controversy,

in which action a verdict was rendered under the direction of the court for the defendants, on which judgment was entered accordingly; that on writ of error to the Supreme Court of the State this judgment was affirmed.

"Sixth. That on February 2, 1895, a second action of ejectment for the same land was brought by the plaintiffs in this suit in the Circuit Court of the United States for the Western District of Pennsylvania, in which a verdict under the direction of the court was rendered for the defendants, on which judgment was entered accordingly; to which judgment a writ of error was sued out from the Circuit Court of Appeals of the Third Circuit, being the writ of error upon which the questions now to be submitted have arisen.

" The said Court of Appeals, desiring the instruction of the Supreme Court of the United States for its proper decision of the following questions or propositions of law, respectfully certifies the same:

"First. Is the decision of the Supreme Court of Pennsylvania, before referred to, conclusive? If not, then,

"Second. What estate did Amanda Stephens take under the devise?"

At the suggestion of both parties, and by order of the Circuit Court of Appeals, the certificate was afterwards amended by inserting the words above printed in brackets in the second and third paragraphs thereof; by striking out those in italics in the second paragraph; by adding to the fifth paragraph copies of the opinions delivered, in the action therein described, by Judge Ewing in the court of common pleas of Allegheny county, not reported, and therefore (omitting the preliminary statement of facts) printed in the margin,[1] and by the Supreme Court of Pennsylvania, as reported

---

[1] " The testator evidently intended to dispose of all his property. The devise to Amanda Stephens, followed by the limitations over, or without them, created a fee, whether in tail or contingent. The circumstances, the age of the devisee, and the will leave us in no doubt that the contingency of Amanda's death did not mean her death before the testator.

" What is the true and legal meaning of the words ' dying without offspring by her husband ' ? Legally, if not defined by other parts of the will,

in 165 Penn. St. 645; and by adding to the sixth paragraph a
copy of the opinion of the Circuit Court of the United States
in the present case, as reported in 69 Fed. Rep. 501.

*Mr. William T. Barber, Mr. John S. Ferguson* and *Mr. S.
Duffield Mitchell* for plaintiffs in error.

*Mr. Johns McCleave* and *Mr. D. T. Watson* for Pittsburgh,
Fort Wayne & Chicago Railway Company, defendants in error,
and *Mr. William Scott* and *Mr. George B. Gordon* for the
Pennsylvania Company, defendants in error, filed a joint brief,
contending:

we take offspring to mean descendants, however remote.    *Thompson* v.
*Beasley*, 3 Drewry, 7; *Young* v. *Davies*, 2 Dr. & Sm. 167; *Allen* v. *Markell*,
36 Penn. St. 117.   Webster defines it 'That which is produced, especially a
child or children; descendants, however remote from the stock.'   The Cen-
tury Dictionary says, 'Progeny; descendants, however remote from the
stock; issue; a collective term applied to several or all descendants.'   True,
it may be confined to children, as in *Lister* v. *Tidd*, 29 Beavan, 618, in a
division of money at death of widow.   In the present case, we interpret
the phrase 'dying without offspring by her husband' to have the same
legal effect and force as the words 'dying without legitimate issue' or 'heirs
of her body.'   They are words of limitation, not of purchase.

"Does the will of James S. Stevenson refer to a definite or an indefinite
failure of issue or offspring of Amanda Stephens?

"To undertake to cite, and still more to reconcile, the numerous decisions
on this general question would not only be confusing and interminable, but
to any clear-headed lawyer it is impossible.   The decisions are irreconcil-
able.

"But there are general rules, well established, which govern this case.
That the words 'dying without issue,' or 'without legitimate issue,' standing
alone and uncontrolled by other parts of the will, 'import an indefinite
failure of issue is well established, and in all the departures from 'funda-
mental rules' it has not been shaken in this State; *Eichelberger* v. *Barnitz*,
9 Watts, 447, being the leading case, affirmed in *Middlesworth* v. *Blackmore*,
74 Penn. St. 414, and in all subsequent cases when the question has been
raised.   *Prima facie*, then, on the settled rule of interpretation, this phrase
in the will imports an indefinite failure of issue.

"Another canon of interpretation is properly invoked by the plaintiff, to
wit, that the intention of the testator must govern; and if, from reading
the whole will, it is apparent that the testator meant, and has potentially said,
that the devise over is to take effect in case the first taker dies leaving no
issue living at the time of her death, it is a definite failure of issue.

I. The decision of the Supreme Court of Pennsylvania, holding that under the long-settled rule of property in Pennsylvania, the heirs of John Barber had no title to the property in dispute, is conclusive in the Federal courts.

The proper construction of this will, under the law of Pennsylvania, has been decided by the highest court of the State in the case of *Mitchell* v. *Pittsburgh, Fort Wayne & Chicago Railway*, 165 Penn. St. 645.

That court held that, under the first clause of the will above quoted, Amanda took an absolute estate, and that the limitation over in the second clause of the devise was substitutionary in character, to take effect only upon Amanda dying in

---

"*Middlesworth* v. *Blackmore,* 74 Penn. St. 414, was a case of this kind, where each of several provisions of the will pointed distinctly to a distribution at the death of Jonathan without issue living at his death, and all these provisions taken together showed clearly and conclusively that that was the intention of the testator.

"Is this such a will ? Counsel for plaintiffs have made a very ingenious argument in the affirmative, and, while the case is not free from doubt, they have failed to convince us that the intention of the testator was different from the ordinary legal import of the terms used in the devise.

"The arguments mainly are that it must be presumed that he intended the event to occur, if at all, in the lifetime of his executors named, who would then sell the property and divide the proceeds; also that testator in the devise uses the words 'in the event of' Amanda dying, &c., and that he uses these words in the preamble of his will, 'in the event of my dying,' and in the second [sixth] paragraph of the will, 'in the event of her (Eliza Stevenson's) death'— in these two other cases referring to what is to be done immediately upon the death — that he, in declaring what was to be done in the contingency of Amanda's death, must have intended at and immediately after her death. It may be he did so intend; but we start with the presumption, the legal rule of interpretation, against it, and in our opinion it is not overcome by the other clauses.

"The legatees of the proceeds of the property, if sold, were not necessarily in being, or known to testator; it is to 'the heirs of John Barber'; the same words he uses in another part of the will, 'John Barber and his heirs,' evidently in the latter not meaning children.

"If an indefinite failure of issue was intended, the fact as to Amanda having had offspring, or her having survived them, is immaterial.

"We are of the opinion that the will of James S. Stephenson devised an estate tail in the property in question to Amanda Stephens, which, having been duly barred and the title conveyed to the defendants, they have a good title to the property, and the plaintiff has no title thereto."

the lifetime of the testator. And, inasmuch as she survived the testator, any operation of the substitutionary clause forever became impossible.

The Circuit Court below held that because a single verdict and judgment in ejectment in Pennsylvania is not conclusive upon the parties, this decision of the Supreme Court of the State construing the will is not conclusive in a second action in the Federal courts, though, as a precedent, it is entitled to peculiar regard. While it is true that a single verdict and judgment in ejectment is not conclusive upon the parties in Pennsylvania, yet this decision of the Supreme Court of the State, declaring the law of this will, we respectfully submit is conclusive. In a second ejectment brought in the lower courts of the State this decision of the Supreme Court would be absolutely binding upon the proper legal interpretation of the will. It is true, that upon a second appeal to the Supreme Court, that court might overrule its previous decision, as it might overrule any former decision, but, yet, so long as the decision remained, it would give the law of the State, absolutely binding upon the parties, and upon all subordinate tribunals in the State and upon the judges of the Supreme Court. Undoubtedly, it was the law of the State, the law of this particular will, at the time this case was presented to the Circuit Court below, and must so remain the law until overruled by the Supreme Court of the State.

That the construction of a will, given by the highest court of the State, will be accepted by the Federal courts, was held by this court in *Henderson* v. *Griffin*, 5 Pet. 151.

In *Suydam* v. *Williamson*, 24 How. 427, the defendant in ejectment claimed title under a purchaser at a sale of the property had under decree of foreclosure of a mortgage by the Court of Chancery in New York. The plaintiff claimed under a devise in the will of an ancestor in the title, by which devise a certain trust had been created. The title depended upon the validity of the foreclosure proceedings as against the terms of the trust created by the will. The Court of Appeals of New York had decided in favor of the title under the foreclosure in *Cochran* v. *Van Surlay*, 20 Wend.

265. Subsequent to this decision of the state court several suits involving the same question were brought to this court: *Williamson* v. *Berry*, 8 How. 495; *Williams* v. *Irish Presbyterian Church*, 8 How. 565; and *Williamson* v. *Ball*, 8 How. 566. In each of these cases this court decided contrary to the said decision, and supported the title under the trust in the will as against the title claimed under the foreclosure. Subsequent to the decisions of this court in 8 Howard, the Court of Appeals in New York rendered a decision upon the same title, adhering to its previous decision in *Cochran* v. *Van Surlay*, 20 Wend. 365, holding that, as between the judgments of their own courts and those of the courts of the United States, their own are binding where there is a conflict except in cases arising under the Constitution and laws of the United States, when the judgments of the Supreme Court of the United States are controlling authorities. The question presented to this court in the case cited in 24 Howard, was whether they should adhere to their own opinion as expressed in the cases in 8 Howard, or acknowledge the authority of the courts of New York to decide the validity of the title. Upon this question this court yielded to the courts of the State, abandoning their previous determination.

See also *Beauregard* v. *New Orleans*, 18 How. 497; *Miles* v. *Caldwell*, 2 Wall. 35, 43; *Daly* v. *James*, 8 Wheat. 495; *Jackson* v. *Chew*, 12 Wheat. 153; *Lane* v. *Vick*, 3 How. 464.

In *Swift* v. *Tyson*, 16 Pet. 1, 18, it was said by Mr. Justice Story: "In all the various cases which have hitherto come before us for decision, this court has uniformly supposed that the true interpretation of the 34th section limited its application to state laws strictly local; that is to say the positive statutes of the State and the construction thereof adopted by the local tribunals, *and to rights and titles to things having a permanent locality, such as the rights and titles to real estate*, and other matters immovable and intraterritorial in their nature and character."

In this case we have the decision of the highest court of Pennsylvania directly upon the question as to the right and title of the respective litigants herein to the real estate situ-

ated in the State of Pennsylvania, and wholly subject to its jurisdiction. We respectfully submit that, where the highest court of a State has settled the title of the respective parties to land within the State, its decision should be respected.

It is a settled rule of property in Pennsylvania construing wills that the happening of the event on a limitation over as in Mr. Stevenson's will is restricted to the lifetime of the testator. Admittedly the event on which John Barber's heirs would take did not happen in Mr. Stevenson's lifetime.

The decision of the Supreme Court of the State, confirming the title of the defendant under this will, was made in application of the Pennsylvania rule of property, which in *Stevenson* v. *Fox*, 125 Penn. St. 568, was stated and approved by the Supreme Court of the State in the following language: "In a devise to A in fee, followed by a proviso that if A should die without leaving issue surviving him, then to B, the testator means the death of A within the period of the testator's own life, with the result that A, surviving the testator, takes a fee without any other condition or limitation, and that B takes nothing." The rule was announced in the jurisprudence of Pennsylvania in the case of *Caldwell* v. *Skilton*, 13 Penn. St. 152.

So we have a clear ruling that the clause of the will: "Or if said child shall die without issue born alive," must be held to mean, dying without issue born alive during the lifetime of the testator.

The rule as thus announced for the construction of such provisions remains to this day the law of Pennsylvania, and is thoroughly imbedded in our jurisprudence as a rule of property upon which hundreds of titles depend. Applying this rule to our will, undoubtedly, the testator when he uses the words: "In the event of Amanda dying . . . without offspring by her husband," intended such death as happening before his own; the gift is immediate; there is no precedent particular interest created. The gift over is made to depend upon an actual contingency, and there is nothing in the will to show the contingency of dying without offspring by her husband was meant to operate without limit during the life of the first

taker, and such being the case, in the language of the court, it is, as in the other instance (death uncoupled with any circumstances making it really contingent), restricted to death of testator.

This rule has been followed ever since, both as to devises of real estate and bequests of personal property, there being no distinction in Pennsylvania between realty and personalty in this respect. *Estate of Mary Biddle,* 28 Penn. St. 59; *Schoonmaker* v. *Stockton,* 37 Penn. St. 461; *Shutt* v. *Rambo,* 57 Penn. St. 149; *Karker's Appeal,* 60 Penn. St. 141; *Fahrney* v. *Holsinger,* 65 Penn. St. 388; *Mickley's Appeal,* 92 Penn. St. 514; *Fitzwater's Appeal,* 94 Penn. St. 141; *Stevenson* v. *Fox,* 125 Penn. St. 568; *McCormick* v. *McElligott,* 127 Penn. St. 230; *King* v. *Frick,* 135 Penn. St. 575; *Morrison* v. *Truby,* 145 Penn. St. 540; *Coles* v. *Ayres,* 156 Penn. St. 197.

These decisions unite in defining the settled rule of property in Pennsylvania to be that, where the devise and the limitation over are, as in Mr. Stevenson's will, the happening of the condition is restricted to the lifetime of the testator, and John Barber's heirs took no title because the condition subject to which Amanda took did not happen in testator's lifetime.

For the Federal courts to reverse that rule, and adopt another rule of property for Pennsylvania, would be to depart from their settled policy of following the rules of property in each State, and would establish two rules for the same title — one good only in the state courts, and one good only in the Federal courts. The title would, in the end, depend on where the citizen lived who held it.

II. If the question as to the nature and extent of the title which Amanda Stephens took under the will of Mr. Stevenson is open in the Federal courts for original investigation, then we assert that she took a fee simple absolute.

If the devise be construed a fee tail, it was barred and became a fee simple.

If the devise be construed a fee with limitation over, the fee became absolute, because (*a*) the event upon which the

limitation must happen was under the rule of property in Pennsylvania restricted in time to the lifetime of the testator, and admittedly it did not so happen. (b) The conditions, upon the non-performance of which the estate was to go over, were performed by Amanda. She did not die unmarried — she married and had offspring by her husband — and therefore the estate did not go to John Barber's heirs.

(1) The word "offspring" used in this clause of the will has the same legal significance as the word "issue" used in similar clauses. *Young* v. *Davies*, 2 Drew. & Sm. 167; *Thompson* v. *Veasley*, 3 Drew. 7; *Allen* v. *Markle*, 36 Penn. St. 117; *Denn* v. *Puckey*, 5 T. R. 299, 306; *Vaughn* v. *Dickes*, 20 Penn. St. 509.

So in our case, as Amanda could not have lawful issue without marriage, we may disencumber the sentence of the marriage condition as was done in *Vaughn* v. *Dickes;* and, so reading the will, we have the ordinary case of limitation over after an indefinite failure of issue, void as an executory devise; good, as a vested remainder, subject to be barred by fine, or common recovery, and now, under our statutes, by deed executed and acknowledged in accordance therewith, which the verdict in this case has found to have been done. This has been the unmolested construction of such clauses in Pennsylvania, certainly ever since the case of *Eichelberger* v. *Barnitz*, 9 Watts, 447. See also *Hackney* v. *Tracy*, 137 Penn. St. 53; *Taylor* v. *Taylor*, 63 Penn. St. 481.

(2) The second matter found by the plaintiff's counsel to rebut the established meaning which the law has placed upon such clauses is the direction, " to divide the proceeds of such sale among living persons." Here again the language of the will is unfortunate for their contention. The direction is: " Then these lots are to be sold and the proceeds to be divided equally amongst the heirs of John Barber."

At the time the will took effect John Barber was living, and had certain children living. The testator, however, in the clause does not direct the division amongst the children of John Barber, but amongst his heirs, and, as there can be no heir of a living person, the legal meaning of the phrase cer-

tainly contemplated a division only after John Barber's death, and then among his heirs whosoever they might be.   That he used the word " heirs " in its proper meaning is manifest from the next succeeding clause of the will, wherein he devised an estate in fee to John Barber as follows: " I give and bequeath to John Barber, of Columbia, and his heirs, the lots," etc. Clearly in this clause he did not mean " children " by the word " heirs," but intended to give, as he did give, by appropriate language, an estate in fee simple.   The word " heirs " in the one clause has precisely the same meaning as in the other.   There is no direction, therefore, in our will to divide the proceeds among living persons, but the direction is to divide them among " heirs " of a living person, thereby clearly manifesting that he only contemplated such division as a remote possibility, or, at least, after the death of John Barber, and not during his lifetime.

A limitation over to persons named and in being at the time of the testator's death, or of the making of the will, is a common feature in many of the cases where the estate created has been adjudged a fee tail in the first taker.

In *Eichelberger* v. *Barnitz*, 9 Watts, 447, the leading case in Pennsylvania, the limitation over was to other children of the testator by name, all living at the death of the devisor.

In *Hackney* v. *Tracy*, 137 Penn. St. 53, the limitation over was to a named sister of the testator living at the time of his death; and it was expressly said by the court that this circumstance was not sufficient to show that the testator intended a definite failure of issue.   So in *Lapsley* v. *Lapsley*, 9 Penn. St. 130; *Allen* v. *Henderson*, 49 Penn. St. 333; *Cochran* v. *Cochran*, 127 Penn. St. 486.

The absolute answer to these suggestions of the plaintiffs in error is found in the decision in *Criley* v. *Chamberlain*, 30 Penn. St. 161.

(3) The third matter found by the plaintiffs by which to rebut the definition of the law, is in combining the contingency of death, unmarried, with death without offspring, if married.

The cases in Pennsylvania, however, have settled this con-

tention against the plaintiffs. *Vaughn* v. *Dickes*, 20 Penn. St. 509. *Mattlach* v. *Roberts*, 54 Penn. St. 148; *McCullough* v. *Fenton*, 65 Penn. St. 418.

(4) The fourth cause for finding that the testator has used language to rebut the definition of the law is supposed to lie in the use by the testator of the expression " in the event of," and the word " then "; and it is supposed that these expressions mark the death of Amanda as the time at which the failure of issue shall be fixed.

The expression " in the event of Amanda dying unmarried, or if married, dying without offspring," etc., certainly means, and can only mean, that if Amanda should die unmarried, or if married, should die without issue; or, upon Amanda dying unmarried, or if married, dying without issue, etc.

The words " in the event of " were clearly used to express the contingency referred to. There can be no doubt or ambiguity as to the meaning of this expression. Nor can the use of the word " then " have the effect contended for and it has never been given such effect in any of the cases cited. *Eichelberger* v. *Barnitz, ub. sup.*; *Robinson's Estate,* 119 Penn. St. 418; *Lawrence* v. *Lawrence,* 105 Penn. St. 335: *Reinoehl* v. *Shirk,* 119 Penn. St. 108.

The rule in *Eichelberger* v. *Barnitz* has been applied in a multitude of cases in Pennsylvania in the construction of devises similar to the one now before us. *Hoff's Estate,* 147 Penn. St. 636; *Ray* v. *Alexander,* 146 Penn. St. 242; *Hackney* v. *Tracy,* 137 Penn. St. 53; *Cochran* v. *Cochran,* 127 Penn. St. 486; *Reinoehl* v. *Shirk,* 119 Penn. St. 108; *Bassett* v. *Hawk,* 118 Penn. St. 94; *Carroll* v. *Burns,* 108 Penn. St. 386; *Lawrence* v. *Lawrence,* 105 Penn. St. 335; *Ogden's Appeal,* 70 Penn. St. 501; *Gast* v. *Baer,* 62 Penn. St. 35; *Matlack* v. *Roberts,* 54 Penn. St. 148; *Criley* v. *Chamberlain,* 30 Penn. St. 161; *Vaughn* v. *Dickes,* 20 Penn. St. 509; *Lapsley* v. *Lapsley,* 9 Penn. St. 130.

Many more cases might be added to those cited, but reference to these will be sufficient to illustrate the application of the rule of *Eichelberger* v. *Barnitz* in the construction of clauses, in many of them, of the identical force and effect of the clause

in controversy here.   By the rule of property established by these decisions, we contend there can be no doubt that if Amanda Stephens did not take a fee absolute, she at least took a fee tail, under the will of James Stevenson, which has been properly barred under the statutes.

Under the will Amanda took on testator's death an absolute estate in fee simple.

The Supreme Court of Pennsylvania, in a well-reasoned opinion, held that Amanda took an absolute estate; that this absolute estate was not limited, but a clause substitutionary in character was inserted, which, in the event of " Amanda dying unmarried, or, if married, dying without offspring by her husband, then those lots are to be sold and the proceeds to be divided equally among the heirs of John Barber."

. That the dying without issue (which is what the clause means) the testator intended should take place in his lifetime, and as it did not the estate became absolute in Amanda on testator's death.

That this will admits of this construction that opinion proves.   It is so well written and reasoned that no words of ours will add to it, and even if this court should hold that it is not conclusive, it is, at least, entitled to peculiar weight. *Bucher* v. *Cheshire Railroad*, 125 U. S. 555, 584.

As was said in *Burgess* v. *Seligman*, 107 U. S. 34, " for the sake of harmony, and to avoid confusion, the Federal courts will lean towards an agreement of views with the state courts, if the question seems to them balanced with doubt."   See also *Jackson* v. *Chew*, 12 Wheat. 153.

Mr. Justice Gray, after stating the case, delivered the opinion of the court.

The real question between the parties, upon which the decision of this case must turn, is what estate Amanda Stephens took under the will of James S. Stevenson, by which he devised to her certain lots of land in Pittsburgh, and further provided as follows : " In the event of Amanda dying unmarried, or, if married, dying without offspring by her husband, then

these lots are to be sold, and the proceeds to be divided equally among the heirs of John Barber."

The testator duly published his will on October 16, 1831, and died on the same day, being fifty years old. At that date, John Barber was alive and married, and had children, some of whom are plaintiffs in this action of ejectment. Amanda Stephens, then a child of five years of age, and so described in the will, survived the testator, and afterwards married. She and her husband executed a deed of the land, intended and sufficient to bar an estate tail therein; and afterwards conveyed the land in fee simple to the defendants and others.

The testator died, and his will took effect, before the passage of the statute of Pennsylvania of April 8, 1833, c. 128, § 9, providing that "all devises of real estate shall pass the whole estate of the testator in the premises devised, although there be no words of inheritance or of perpetuity, unless it appear by a devise over, or by words of limitation or otherwise in the will, that the testator intended to devise a less estate"; and long before the statute of April 27, 1855, c. 387, § 1, providing that "whenever hereafter, by any gift, conveyance or devise, an estate in fee tail would be created according to the existing laws of this State, it shall be taken and construed to be an estate in fee simple, and as such shall be inheritable and freely alienable." Penn. Laws of 1832–33, p. 249; Laws of 1855, p. 368; Purdon's Digest, (12th ed.) 2103, § 11; 810, § 8.

A former action of ejectment was brought by the administrator with the will annexed of the testator against these defendants in the court of common pleas of Allegheny county, in the State of Pennsylvania, which directed a verdict and rendered judgment for the defendants, on the ground that Amanda Stephens took an estate tail, which had been duly barred, and the title conveyed to the defendants.

Upon a writ of error, that judgment was affirmed by the Supreme Court of Pennsylvania, on the ground that the devise over to the heirs of John Barber was an alternative and substitutionary devise, dependent upon the contingency of Amanda's dying without offspring in the lifetime of the

testator, and this contingency not having happened, that she took an absolute estate in fee simple. 165 Penn. St. 645.

This second action of ejectment was afterwards brought in the Circuit Court of the United States, which directed a verdict and rendered judgment for the defendants, on the ground that Amanda, if she did not take a fee, took at least an estate tail. 69 Fed. Rep. 501.

To reverse this judgment, the plaintiffs sued out a writ of error from the Circuit Court of Appeals, which has certified to this court these two questions :

"First. Is the decision of the Supreme Court of Pennsylvania, before referred to, conclusive? If not, then,

"Second. What estate did Amanda Stephens take under the devise?"

The first question, in the terms in which it is expressed, and taken by itself, is somewhat difficult to answer.

The decision of the Supreme Court of Pennsylvania, in the former action of ejectment, is certainly not conclusive as an adjudication of the rights of the parties, inasmuch as a single verdict and judgment in ejectment, not being conclusive under the laws and in the courts of the State, is not conclusive in the courts of the United States, and is no bar to a second action of ejectment. *Equator Co.* v. *Hall,* 106 U. S. 86 ; *Britton* v. *Thornton,* 112 U. S. 526 ; *Gibson* v. *Lyon,* 115 U. S. 439 ; *Smale* v. *Mitchell,* 143 U. S. 99.

The question, whether the opinion of the Supreme Court of the State in the former action is conclusive evidence of the law of Pennsylvania in a court of the United States, depends upon the further question whether the opinion is declaratory of the settled law of Pennsylvania as to the effect of such devises, or is a decision upon the construction of this particular devise.

When the construction of certain words in deeds or wills of real estate has become a settled rule of property in a State, that construction is to be followed by the courts of the United States in determining the title to land within the State, whether between the same or between other parties. *Jackson* v. *Chew,* 12 Wheat. 153, 167 ; *Henderson* v. *Griffin,*

5 Pet. 151; *Suydam* v. *Williamson*, 24 How. 427; *Burgess* v. *Seligman*, 107 U. S. 20, 33.

But a single decision of the highest court of a State upon the construction of the words of a particular devise is not conclusive evidence of the law of the State, in a case in a court of the United States, involving the construction of the same or like words, between other parties, or even between the same parties or their privies, unless presented under such circumstances as to be an adjudication of their rights. *Lane* v. *Vick*, 3 How. 464, and *Vick* v. *Vicksburg*, 1 How. (Miss.) 379; *Homer* v. *Brown*, 16 How. 354, and *Brown* v. *Lawrence*, 3 Cush. 390; *Gibson* v. *Lyon*, 115 U. S. 439, 446.

It becomes important, therefore, that the opinion of the Supreme Court of Pennsylvania in the former action of ejectment should be carefully examined and compared with the previous judgments of that court.

In that opinion, delivered by Chief Justice Sterrett, the principal grounds of the decision were stated as follows:

"Although the devise to Amanda Stephens was made before the act of 1833, and without words of inheritance, yet, when read in connection with the introductory clause of James S. Stevenson's will, there is a plain intent manifested in the first instance, to give her an absolute estate. In *McCullough* v. *Gilmore*, 11 Penn. St. 370, where substantially the same expression was used, this court said: ' These words, and the like of them, are generally carried down into the corpus of the will, to show that the testator meant to dispose of his whole interest in a particular devise, unless words are used which plainly indicate an intent to limit it.' Numerous cases to the same effect are cited in *Schriver* v. *Meyer*, 19 Penn. St. 87. The first taker is always the favorite object of testator's bounty, and as such entitled to the benefit of every implication.

"There are no words used in the second paragraph of the will, containing the devise to Amanda, which indicate any intent to limit her estate. Had the will stopped there, the devise would unquestionably have been absolute. The following paragraph was not intended to operate by way of limita-

tion, but was manifestly substitutionary in its character. The thought would very naturally occur to testator to make an alternative devise for the contingency of Amanda's dying without issue; *Biddle's Appeal*, 28 Penn. St. 59; and this was in effect what was done. 'In the event,' said testator, 'of Amanda dying unmarried, or, if married, dying without offspring by her husband, then these lots are to be sold, and the proceeds to be divided equally among the heirs of John Barber.' The word 'offspring' here used is but a synonym for 'issue'; and 'issue' cannot be lawful without marriage. The devise is, then, in the first instance, to Amanda; and, in the event of her dying without issue, over to alternate beneficiaries. Dying without issue was thus made the contingency upon which the substituted beneficiaries could take. *Coles* v. *Ayres*, 156 Penn. St. 197. But death when? Where, as here, there is nothing to indicate an adverse intent, additional limitations dependent on no other contingency than is implied from the language 'if any of them die,' or 'in case of death,' or the like, cannot be referred to the event whenever it may happen — for that would be to give a forced construction to the words — but must be construed as referring to death in association with some additional circumstance which makes it actually contingent. That circumstance is said to be naturally in regard to the time of happening, and that time, where, as here, the gift is immediate, is necessarily the death of the testator, there being no other period to which the death can refer. *Caldwell* v. *Skilton*, 13 Penn. St. 152." 165 Penn. St. 649, 650.

The first statement, that by the devise in the second paragraph of the will, read in connection with the introductory clause, there was a plain intent manifested, in the first instance, to give Amanda an absolute estate, was in accord with the settled law of Pennsylvania. *Schriver* v. *Meyer*, (1852) 19 Penn. St. 87, 90, 91, and cases there cited. And the statement that the word "offspring," in the next paragraph, was used as a synonym for "issue," was in accord with a judgment of that court delivered in 1859 by Mr. Justice Strong (afterwards of this court), as well as with the English

decisions.  *Allen* v. *Markle*, 36 Penn. St. 117; *Thompson* v. *Beasley*, 3 Drewry, 7 ; *Young* v. *Davies*, 2 Dr. & Sm. 167.

Whether the conclusion, that the devise over to John Barber's heirs was substitutionary, and could take effect only at the time of testator's death, and not afterwards, was in accord with the law of Pennsylvania as declared in previous decisions, is a question requiring more consideration.

Chief Justice Sterrett's propositions as to the meaning of the words "in case of death," or the like, are taken, almost *verbatim*, from the opinion of Mr. Justice Bell, in *Caldwell* v. *Skilton*, (1850) 13 Penn. St. 152, to which he refers.   In that case, the testator devised real estate to his wife during her life or widowhood, and, at her decease or marriage, to his children in equal shares in fee, and, in case of the death of any child, his share to go to his issue, or if he should "die without issue born alive," to the testator's surviving children ; the decision was that the devise over to the children, upon the death or marriage of the widow, must take effect upon her death, or upon the testator's death if he survived her, and, therefore, the devise over of the share of each child must take effect at the same time; and in the opinion, immediately after the propositions above referred to, Mr. Justice Bell added : "But as a testator is not supposed to anticipate himself surviving the object of his bounty, this construction is only made from necessity, and gives way when the contingency of the death of the first beneficiaries may be referred to some other time." 13 Penn. St. 156.

There is, indeed, a line of cases in that court, in which a devise over, after a devise in fee, has been held to be substitutionary, when expressed by such words as if the first taker die "without children"; *Biddle's Estate*, (1857) 28 Penn. St. 59; *McCormick* v. *McElligott*, (1889) 127 Penn. St. 230; or "without leaving issue living at the time of his death," *Mickley's Appeal*, (1880) 92 Penn. St. 514; *Stevenson* v. *Fox*, (1889) 125 Penn. St. 568; *King* v. *Frick*, (1890) 135 Penn. St. 575; *Morrison* v. *Truby*, (1891) 145 Penn. St. 540; or "intestate and without issue," *Karker's Appeal*, (1869) 60 Penn. St. 141; *Coles* v. *Ayres*, (1893) 156 Penn. St. 197.   In none of

these cases, however, was the devise so expressed that it could be construed as creating an estate tail.

Two other cases were cited at the bar, as favoring the substitutionary rule, in one of which "die unmarried or without issue"; *Schoonmaker* v. *Stockton,* (1860) 37 Penn. St. 461; and in the other "die without heirs"; *Shutt* v. *Rambo,* (1868) 57 Penn. St. 149; were held to mean "die in the lifetime of the testator." But in each of them, not only the first device was to a child of the testator in fee, and the limitation over was to the testator's other children, but the whole scope of the will was thought to show that he could not have meant an indefinite failure of the issue. And in the second case, Chief Justice Thompson said: "But giving the words of the clause all that could possibly be claimed for them, to wit, an implication of a limitation to issue by the words 'die without heirs,' equivalent to 'dying without issue,' as in *Eichelberger* v. *Barnitz,* 9 Watts, 447, and kindred cases, the devise to Emma Rambo, the plaintiff below, would be a fee tail, which by the act of April 27, 1855, would be turned into a fee simple, the will bearing date May 27, 1857. That the word 'heirs' meant 'issue' must be inferred, in the presence of the fact that her brothers and sisters were living and would be her heirs. It must, therefore, have been 'issue,' that was meant by the words. In either view of the case, the plaintiff below was vested with the fee simple of the property in question." 57 Penn. St. 151.

Where a testator specifically devised lands to his daughter in fee, and provided that should she "die in her minority, and without lawful issue then living, the lands hereby devised shall revert to and become part of the residue of my estate," the substitutionary rule was not applied, either by the Supreme Court of Pennsylvania, or by this court; but both courts held that the daughter, having survived the testator, took an estate in fee, subject to be divested by her afterwards dying under age and without issue. *Britton* v. *Thornton,* (1878) 25 Pittsburgh Law Journal, 158, and (1884) 112 U. S. 526.

A careful examination of the adjudged cases in Pennsylvania irresistibly compels us to the conclusion that there is

no settled rule of property in that State, by which the words of the devise to Amanda Stephens, "and in the event of Amanda dying unmarried, or, if married, dying without offspring by her husband," should be construed as restricted to her death in the testator's lifetime, making the devise over substitutionary, and to take effect only upon her death within that time.

The result is, that the decision of the Supreme Court of Pennsylvania upon the construction of the will of James S. Stevenson is not conclusive; and that the first question certified to this court by the Circuit Court of Appeals must be answered in the negative.

This brings us to the second question, which is, " What estate did Amanda Stephens take under the devise?"

In *Eichelberger* v. *Barnitz*, above cited, decided in 1840, the court, speaking by Mr. Justice Serjeant, said : "The principle has now become a settled rule of property, in relation to lands, that if a devise be made to one in fee, and if he die without issue, or on failure of issue, or for want of issue, or without leaving issue, then over to another in fee, the estate of the first taker is a fee tail, which, if he have issue, passes to them *ad infinitum* by descent as tenants in tail." And this rule was applied to a devise in which the contingency was expressed in the words "my will is, because my son Henry is not yet married, that if he should die without leaving any lawful issue, that then his full share shall fall or go in equal share to my other three children." 9 Watts, 450, 451.

In *Middleswarth* v. *Blackmore*, (1873) 74 Penn. St. 414, 419, the court, speaking by Mr. Justice Mercur, and referring to *Eichelberger* v. *Barnitz*, above cited, and other cases, recognized and affirmed that "as a general rule, and standing alone, the language, 'die without leaving any legitimate issue,' must be understood to mean issue indefinitely; that the estate created would, in such case, have been one in tail"; and denied such effect to those words, only because of the general scope of the particular will, and of the land being thereby charged with the payment of certain sums to persons living, and required, in case of the happening of the contingency

named, to be sold by the testator's executors, and the proceeds, after paying those sums, to be distributed among his grandchildren.

Again, in *Lawrence* v. *Lawrence*, (1884) 105 Penn. St. 335, a devise of land to the testator's two nephews, "and their heirs, as tenants in common," but if one of them "should die without leaving lawful issue," his share to go to the other, ",his heirs and assigns forever," was held to create an estate tail in the nephews; and Mr. Justice Trunkey, in delivering judgment, said that it had not been doubted, since the decision in *Eichelberger* v. *Barnitz*, above cited, that the rule in Pennsylvania is that "the established interpretation of words of limitation on failure of issue, whether the terms be 'if he die without issue,' 'if he die without having issue,' 'if he have no issue,' or 'if he die before he has any issue,' in absence of all words making a different intent apparent, is, that they import a general indefinite failure of issue, and not a failure at the first taker's death." 105 Penn. St. 339.

In *Reinoehl* v. *Shirk*, (1888) 119 Penn. St. 108, the testator devised real estate to two children of his deceased son in fee, and if either should "die without leaving lawful issue," his share to go to the survivor, and "if both of the said children should die without leaving lawful issue," the real estate devised to them to go to the testator's other children; and directed that under no circumstances should his son's divorced wife have any part of the testator's estate. The court, speaking by Mr. Justice Sterrett, held that the children of the son took an estate tail; and said that since *Eichelberger* v. *Barnitz*, above cited, it had undoubtedly been the rule in Pennsylvania, that, standing alone, the words "die without leaving issue," or other expressions of the same import, mean a general indefinite failure of issue, and not a failure at the death of the first taker.

In *Hackney* v. *Tracy*, (1890) 137 Penn. St. 53, a testator, who made his will in 1854 and died in 1864, devised real estate to his daughter Elizabeth, "but in case my daughter Elizabeth should die without issue, then in that case all her interest that she might or could have in the same to descend to my daugh-

ter Mary " ; and it was held, in an opinion delivered by Mr.
Justice Green, reviewing the previous cases, that the devise
over was upon an indefinite failure of issue of Elizabeth, and
that she took an estate tail, enlarged by the act of 1855 into
a fee simple.

Like decisions were made in 1892 in two cases, in one of
which the devise was to a daughter in fee simple, " provided,
nevertheless, that in case she shall die without leaving lawful
issue, then it is my will that the property above devised to her
shall be equally divided amongst the children of my brother";
*Ray* v. *Alexander*, 146 Penn. St. 242; and in the other the
testator, after devising to his wife an estate for life, provided
that " in case either of my daughters shall die without issue,
either before or after the decease of my wife, then the amount
of their share or shares in the residue of the estate shall revert
back to the remainder of my children, share and share alike";
and " the share or shares that such of my daughters as may
be without issue before or after the death of my wife may be
entitled to " should be invested, and the income paid to them;
" and after her death the residue of the estate is to be divided,
share and share alike, amongst those of my heirs that are then
alive." *Hoff's Estate*, 147 Penn. St. 636.

In view of this series of adjudications of the highest court of
the State, extending over more than half a century, we cannot
but accede to the opinion expressed by Judge Atcheson, with
the concurrence of Judge Buffington, in the Circuit Court of the
United States, in the case at bar, that " it is firmly established by
an unbroken line of authorities, that a devise over to named
living persons, upon the failure of the issue of the first taker,
does not import a definite failure of issue "; and that " to hold
at this late day that such a devise over imports a definite failure
of issue would shake a multitude of titles." 69 Fed. Rep. 504,
505.

It has also long been regarded as established law in Penn-
sylvania, that such words as " in case of his death unmarried
or without issue," in this connection, are equivalent to simply
"dying without issue," unless there is something else in the
case to warrant and require a different construction of the

will.　*Vaughan* v. *Dickes*, (1853) 20 Penn. St. 509, 513; *Matlack* v. *Roberts*, (1867) 54 Penn. St. 148, 150; *McCullough* v. *Fenton*, (1870) 65 Penn. St. 418, 426.

The result of the foregoing considerations is that, by a settled rule of property in Pennsylvania, the devise to Amanda Stephens, with a devise over "in the event of Amanda dying unmarried, or, if married, without offspring by her husband," gave her an estate tail, unless this conclusion is controlled by other words in the will, or by the facts stated in the certificate of the Circuit Court of Appeals.

Indeed, the reasoning of Chief Justice Sterrett upon the construction of the clause "in the event of Amanda dying unmarried, or, if married, dying without offspring by her husband," would seem to point to the same conclusion. That reasoning, in his own words, above quoted, is that "the word 'offspring' here used is but a synonym for 'issue'"; that "'issue' cannot be lawful without marriage"; that "the devise is, then, in the event of her dying without issue, over to" the heirs of John Barber; and that "dying without issue was thus made the contingency upon which" those heirs could take.　165 Penn. St. 649.　Assuming the correctness of that inference, namely, that the contingency described was simply "dying without issue," these words would import an indefinite failure of issue, according to the long line of authorities above cited, beginning with the judgment delivered by Mr. Justice Serjeant in *Eichelberger* v. *Barnitz*, and including the judgment delivered by Mr. Justice Sterrett in *Reinoehl* v. *Shirk;* and would be inconsistent with the conclusion of the court that the devise over to the heirs of John Barber must take effect, if at all, upon the death of the testator.

The Supreme Court of Pennsylvania considered that conclusion to be strengthened by two special considerations: First. "That, in the absence of a fixed period, the power of sale was intended to be exercised at a near rather than a remote period after the testator's death," because, as said in *Wilkinson* v. *Buist*, 124 Penn. St. 253, 261, "a power of sale without limit would doubtless be bad, under the rule against perpetuities."　Second. "That testator had in view living

persons as substituted beneficiaries — the gift over is to the 'heirs,' and therefore the children, of John Barber, who was living — and the natural inference is he intended them to take as such." 165 Penn. St. 650, 651.

But there does not appear to this court to be anything in the will indicating that the time, either of executing the power of sale of this land, or of ascertaining the persons who are to take the proceeds of its sale, must be upon or soon after the death of the testator.

The words "in the event of Amanda dying unmarried, or, if married, dying without offspring by her husband," which, as has been seen, import of themselves an indefinite failure of issue, and therefore an estate tail in Amanda, are followed by the words "then these lots are to be sold, and the proceeds to be divided equally among the heirs of John Barber."

There is no direction that the sale of these lots shall be made by the executors; the sale is to be made upon the expiration of the estate tail; and a power to sell upon the expiration of an estate tail, and to divide the proceeds among persons then ascertainable, is not within the rule against perpetuities. *Cresson* v. *Ferree*, 70 Penn. St. 446, 449; *Heasman* v. *Pearse*, L. R. 7 Ch. 275; Gray on Perpetuities, §§ 447, 490.

The persons who are to take under the limitation over are described as "the heirs of John Barber." Although, strictly speaking, no one is the heir of a living person, yet a devise to the "heirs" of a person named (who is a living person, and is so recognized in the will) describes with sufficient certainty the persons intended, and shows that the word is not used in the strict sense, but as meaning the heirs apparent of that person, or the persons who would be his heirs were he dead when the devise takes effect. *Darbison* v. *Beaumont*, 1 P. Wms. 229; *S. C.*, Fortescue, 18; *Goodright* v. *White*, 2 W. Bl. 1010; *Heard* v. *Horton*, 1 Denio, 165. That this testator used the word in this meaning is confirmed by the clause in which he directs the residue of his estate to be sold and divided into sixteen shares, of which he gives two shares "to John Barber," and two other shares "to the heirs of John

Barber." But the word "heirs" .is not limited, in its own meaning, or by anything in this will, to children; -and applies either to John Barber's children, or to his more remote descendants, whichever may be his heirs if he be dead, or his heirs apparent if he be living, when the devise in question takes effect.

The facts added, by way of amendment, to the second paragraph of the certificate of the Circuit Court of Appeals, are wholly immaterial. Evidence of extrinsic circumstances, such as the testator's relation to persons, or the amount and condition of his estate, may be admitted to explain ambiguities of description in the will, but never to control the construction or extent of devises therein contained. As said by this court, speaking by Mr. Justice Grier: " A court may look beyond the face of the will where there is an ambiguity as to the person or property to which it is applicable, but no case can be found where such testimony has been introduced to enlarge or diminish the estate devised." *King* v. *Ackerman,* 2 Black, 408, 418. See also *Allen* v. *Allen,* 18 How. 385. To allow the legal construction of the terms of a will, executed and attested as required by law, to be affected by testimony to the testator's state of health at the time of publishing his will, or to his length of life afterwards, would be open in the highest degree to the confusion and uncertainty resulting from permitting the meaning of written instruments to be altered by parol evidence.

For the reasons above stated, this court is of opinion that the answer to the second question certified by the Circuit Court of Appeals must be that Amanda Stephens took an estate tail under the devise to her.

*Ordered accordingly.*